## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TENNESSEE
## KNOXVILLE

IN RE: SURREY VACATION RESORTS,  )
      INC.,                    )
                          )
      Alleged Debtor      )
                          )    No. 3:15-bk-32648 - *SHB*
                          )    Chapter 7
                          )

*AMENDED*

## AFFIDAVIT OF DAVID R. COPE

STATE OF FLORIDA     )
                       )
COUNTY OF PINELLAS   )

David R. Cope, being duly sworn, makes oath as follows:

1.    I am general counsel for Surrey Vacation Resorts, Inc. (Surrey).  I have personal knowledge of the matters set forth in this affidavit.

2.    Surrey is a corporation organized and validly existing under the laws of Missouri since May 3, 1993.  During the 180 days immediately preceding the filing of the involuntary petition in the above styled case on August 31, 2015, Surrey's corporate headquarters was located at 430 State Highway 165 South, Branson, Taney County, Missouri 65616. During said 180 day period Surrey's principal assets were located in Taney County and Stone County Missouri. Both Taney County and Stone County are located in the Western District of Missouri. Surrey's principal assets consist of the following:

(a)   Over 1,500 time share interval interests. The average retail price of those interests is $10,000 each, for a total value of over $15,000,000.00.

(b)   Approximately $2,200,000.00 in accounts receivable.

(c)   Real estate in Taney County, as follows:

(1) 420 S. State Hwy 165, .45 acres with two commercial buildings and parking lot, appraised by the Taney County Assessor at $124,284.00.

(2) W. State Hwy 76, .92 acres with a commercial building and parking lot, appraised by the Taney County Assessor at $384,351.00.

(3) 2805 Green Mountain Dr., 3.81 acres with a commercial building and parking lot, appraised by the Taney County Assessor at $1,404,348.00.

(4) Green Mountain Dr., 2.17 acres with a strip shopping center and parking lot, appraised by the Taney County Assessor at $1,118,922.00.

(5) W. State Hwy 76, 2.09 acres, unimproved commercial property, appraised by the Taney County Assessor at $273,120.00

(6) Golf View Drive, 7.1 acres, unimproved residential property, appraised by the Taney County Assessor at $137,456.00.

(7) Golf View Drive, 3.66 acres, unimproved residential property, appraised by the Taney County Assessor at $137,616.00.

True copies of Taney County Assessor records with information on the real property are Collective Exhibit A hereto.

3.    One of the petitioning creditors in this case is Wahoo Ziplines TN, LLC (Wahoo). Wahoo and Surrey are parties to a contract, a true copy of which is Exhibit B hereto.  Under the contract, Surrey issues vouchers to customers as part of a vacation package or in connection with an invitation to attend a vacation ownership sales presentation.  The vouchers may be redeemed for admission to a zipline attraction operated by Wahoo.  Surrey has agreed to pay Wahoo for each voucher redeemed by a customer.  Payment from Surrey to Wahoo is due within 15 days from Surrey's receipt of Wahoo's invoice.

4.     Surrey and Wahoo were parties to a similar contract during 2014.  A true copy of the 2014 contract is <u>Exhibit C</u> hereto.

5.     Kent Emmons signed the contracts as CEO of Wahoo.  In telephone conversations and a text message to me, a true copy of which is <u>Exhibit D</u> hereto, Emmons admitted that he holds an ownership interest in Wahoo.

6.     Surrey is also a party to a Marketing Agreement with Kent Direct, Inc., a true copy of which is <u>Exhibit E</u> hereto.  Emmons signed the contract as president of Kent Direct.  Emmons runs Kent Direct.

7.     Pursuant to the Marketing Agreement, Emmons, through Kent Direct, managed two radio stations owned by 127, Inc. an affiliate of Surrey: KLFJ radio in Springfield, Missouri, and WSEV radio in Sevierville, Tennessee. On or about July 22, 2015, Surrey terminated the Marketing Agreement with Kent Direct, thereby terminating Kent Direct's management of the radio stations. After the Marketing Agreement was terminated, Emmons attempted unsuccessfully to negotiate the sale or transfer of ownership of the two radio stations from Surrey to Kent Direct.

8.     When his effort to obtain the radio stations was frustrated, Emmons threatened to initiate involuntary bankruptcy proceedings against Surrey unless the radio stations were given or sold to Kent Direct. Emmons also threatened to initiate involuntary bankruptcy proceedings against Capital Resorts Group, LLC (Capital) a company with whom Surrey regularly does business.

9.     On September 3, 2015, I participated in a telephone conference call with Emmons and several others.  In the telephone call, Emmons said he would cause a dismissal of this involuntary bankruptcy proceeding if we would pay him $140,000.00 and transfer the Sevierville, Tennessee radio station and other assets to him.

10.    Meanwhile, in August 2015, in apparent retaliation for Surrey's refusal to sell or transfer the radio stations to Kent Direct, and in an apparent effort to coerce Surrey into selling or transferring the stations, Emmons created an internet website with the domain name "Jasonshroff.com" (the Website).   Jason Shroff is a member of Capital.  The Website contained false and defamatory remarks and information about Surrey, Capital, Shroff, and Alex Hodges, the former Chief Operating Officer of Surrey.  Exhibit F hereto contains true copies of screen shots taken from the Website, redacted to remove foul language.

11.    In response to the creation of the Website, Surrey filed suit against Emmons in state court in Missouri.  Collective Exhibit G hereto contains true copies of the Petition and the Application for Temporary Restraining Order filed in the Missouri case, both of which were verified by me. On August 20, 2015, the Missouri court entered a temporary restraining order against Emmons, a true copy of which is Exhibit H hereto.  The TRO enjoined Emmons from using the domain name Jasonshroff.com; from using Surrey's business name or mark in any published format; and from publishing any statements about Surrey or its business practices. Emmons was also been ordered to delete all content on the domain name Jasonshroff.com.

12.    On August 20, 2015, I contacted Domains by Proxy, which Emmons was using to attempt to conceal his ownership of the website, and advised them of the TRO. On August 21, 2015, Domains by Proxy sent me an email message, a true copy of which is Exhibit I hereto, revealing the Emmons in fact owned the website, and agreeing to cancel its proxy service to Emmons.

13.    On September 2, 2015, the Missouri court held a show cause hearing. Emmons did not appear. Instead, he sent a letter to the court, a true copy of which is Exhibit J hereto. In the letter, he did not deny any of the allegations of the Petition or the TRO Application. He did tell the court that he would abide by the TRO and that the website had been taken down.

14.   At the September 2 hearing, the Missouri court ruled that the TRO would remain in effect until further orders of the court. A true copy of the court docket reflecting that action is Exhibit K hereto.

15.   Capital and Mr. Shroff have also filed their own action against Emmons in federal district court in Knoxville, Tennessee, Case No. 3:15-cv-00368, seeking injunctive relief and money damages based on the false and defamatory statements on the website.

16.   Another petitioning creditor in this action is Waitt Outdoor (Waitt).

17.   Surrey owes money to Waitt for billboard rentals. Waitt hired a collection firm, Andersen, Randall and Richards (Andersen) to collect the debt. On July 23, 2015, Pam Bim of Andersen contacted Surrey and demanded payment of $16,618.75. I negotiated with Ms. Bim, and reached a settlement agreement under which Surrey would pay the amount due in five monthly payments of $3,323.75 each, to be sent to Anderson. The first payment was sent August 4, 2015. Surrey is still making payments to Waitt, through Andersen, pursuant to the settlement agreement.

18.   Because Surrey had an agreement settling its outstanding balance with Waitt, I was surprised when I received the involuntary petition in this case signed by Waitt as a petitioning creditor on August 23, 2015, claiming that Waitt was owed an immediate payment of over $10,000. Surrey disputes that it owes Waitt such a payment, because Waitt has agreed to accept payment in monthly installments.

Further deponent sayeth not.

_____
DAVID R. COPE

Subscribed and sworn before me
this 22nd day of September, 2015.

_____
Notary Public
My commission expires: _5 28, 19_

MARY JO LATHAM
NOTARY PUBLIC
STATE OF FLORIDA
Comm# FF235524
Expires 5/28/2019

6

### CERTIFICATE OF SERVICE

I hereby certify that on this the 23rd day of September, 2015, a copy of the foregoing Affidavit of David R. Cope was filed electronically.  The Affidavit will be served electronically on the entities specified in the Notice of Electronic Filing to be issued by the electronic case filing system.

/s/ M. Edward Owens, Jr.
M. Edward Owens, Jr.

 **Beacon**™ Taney County, MO

## Parcel

| | |
|---|---|
| Parcel ID | 18-1.0-02-004-010-004.000 |
| Property Address | 420 S STATE HWY 165 |
| Tax Code | 4CXB |
| Sec/Twp/Rng | 2/22/22 |
| Brief | GATEWAY GATEWAY LTS 11 & 12 BLK E; ADJ |
| Tax Description | VAC ALTA ST; CITY O |
| | (Note: Not to be used on legal documents) |
| School District | Branson |
| Fire District | N/A |
| City | Branson |
| Deed Book/Page/Date | 361-6588 (1999-08-03) |

## Owner

SURREY VACATION RESORTS INC
DBA: DBA (PREVIOUSLY BRANSON TELEPRODUCTIONS)
430 STATE HIGHWAY 165
BRANSON, MO 65616-3541

## Land

| | |
|---|---|
| Lot Dimensions | 95 X 205 IRR |
| Lot Area | 0.450 Acres |

## Improvements

| Number | Description | Year Built | Base Area | Adjusted Area |
|---|---|---|---|---|
| 1-1 | Store | 1986 | 1341 | 1461 |
| 1-2 | Office | 1969 | 1260 | 1764 |

## Valuation

| | Improvements | Land | Total | Assessed Total |
|---|---|---|---|---|
| Agricultural | $0.00 | $0.00 | $0.00 | $0.00 |
| Commercial | $96,674.00 | $22,500.00 | $119,174.00 | $38,140.00 |
| Residential | $0.00 | $5,110.00 | $5,110.00 | $970.00 |
| Total | | | | $39,110.00 |

Taney County makes no warranties, expressed or implied, as to the use of the data.

Last Data Upload: 9/21/2015 10:42:31 PM

Developed by
Schneider   The Schneider Corporation



EXHIBIT
*A*

# Beacon™ Taney County, MO



**Overview**

**Legend**
- ☐ Parcels
- Roads
- ☐ Lakes
- ☐ Corporate Limits



94 ft

| | | | | |
|---|---|---|---|---|
| **Parcel ID** | 18-1.0-02-004-010-004.000 | **Alternate ID** | n/a | **Owner Address** SURREY VACATION RESORTS INC |
| **Sec/Twp/Rng** | 2-22-22 | **Class** | n/a | 430 STATE HIGHWAY 165 |
| **Property Address** | 420 S STATE HWY 165 | **Acreage** | 0.45 | BRANSON MO 65616-3541 |
| **District** | 4CXB | | | |
| **Brief Tax Description** | GATEWAY GATEWAY LTS 11 & 12 BLK E; ADJ VAC ALTA ST; CITY O | | | |

(Note: Not to be used on legal documents)

Date created: 9/22/2015
Last Data Upload: 9/21/2015 10:42:31 PM

**Developed by**
Schneider  The Schneider Corporation



# Beacon™ Taney County, MO

## Parcel

| | |
|---|---|
| Parcel ID | 17-3.0-06-001-001-005.000 |
| Property Address | W STATE HWY 76 |
| Tax Code | 4CXB |
| Sec/Twp/Rng | 6/22/21 |
| Brief Tax Description | BRANSON HEIGHTS BRANSON HEIGHTS PT LTS 2 & 3 BLK 1; CITY OF BRANSO |
| | (Note: Not to be used on legal documents) |
| School District | Branson |
| Fire District | N/A |
| City | Branson |
| Deed Book/Page/Date | 352-8945 (1998-06-24) |

## Owner

SURREY VACATION RESORT
430 STATE HIGHWAY 165 #C
BRANSON, MO 65616-3541

## Land

| | |
|---|---|
| Lot Dimensions | 200 X 200 |
| Lot Area | 0.920 Acres |

## Improvements

| Number | Description | Year Built | Base Area | Adjusted Area |
|---|---|---|---|---|
| 1-1 | Store | 1976 | 4104 | 5037 |
| 1-2 | Concrete Paving | 1976 | 675 | 675 |
| 1-3 | Asphalt Paving | 1976 | 2200 | 2200 |

## Valuation

| | Improvements | Land | Total | Assessed Total |
|---|---|---|---|---|
| Agricultural | $0.00 | $0.00 | $0.00 | $0.00 |
| Commercial | $244,351.00 | $140,000.00 | $384,351.00 | $122,990.00 |
| Residential | $0.00 | $0.00 | $0.00 | $0.00 |
| Total | | | | $122,990.00 |

Taney County makes no warranties, expressed or implied, as to the use of the data.

Last Data Upload: 9/21/2015 10:42:31 PM

Developed by
The Schneider Corporation

# Beacon™ Taney County, MO



**Overview**

**Legend**
- ☐ Parcels
- – Roads
- ☐ Lakes
- ☐ Corporate Limits

STATE HWY 76

 94 ft

| | | | |
|---|---|---|---|
| Parcel ID | 17-3.0-06-001-001-005.000 | Alternate ID n/a | Owner Address SURREY VACATION RESORT |
| Sec/Twp/Rng | 6-22-21 | Class n/a | 430 STATE HIGHWAY 165 #C |
| Property Address | W STATE HWY 76 | Acreage 0.92 | BRANSON MO 65616-3541 |
| District | 4CXB | | |
| Brief Tax Description | BRANSON HEIGHTS BRANSON HEIGHTS PT LTS 2 & 3 BLK 1; CITY OF BRANSO | | |
| | (Note: Not to be used on legal documents) | | |

Date created: 9/22/2015
Last Data Upload: 9/21/2015 10:42:31 PM

**Developed by**
Schneider    The Schneider Corporation

 **Beacon**™ Taney County, MO

## Parcel

| | |
|---|---|
| Parcel ID | 18-1.0-01-003-001-006.000 |
| Property Address | 2805 GREEN MOUNTAIN DR |
| Tax Code | 4CXB |
| Sec/Twp/Rng | 1/22/22 |
| Brief | THOUSAND HILLS THOUSAND HILLS LTS 1 & 27 |
| Tax Description | REPLAT LTS 27 TH 43; CIT |
| | (Note: Not to be used on legal documents) |
| School District | Branson |
| Fire District | N/A |
| City | Branson |
| Deed Book/Page/Date | 386-4240 (2001-07-27) |

## Owner

SURREY VACATION RESORT INC
DBA: DBA SURREY SALES CENTER
430 STATE HIGHWAY 165
BRANSON, MO 65616-3541

## Land

| | |
|---|---|
| Lot Dimensions | 250 X 404.57 IRR |
| Lot Area | 3.810 Acres |

## Improvements

| Number | Description | Year Built | Base Area | Adjusted Area |
|---|---|---|---|---|
| 1-1 | Restaurant | 1993 | 15360 | 16247 |
| 1-2 | Asphalt Paving | 1993 | 67120 | 67120 |
| 1-3 | Concrete Paving | 1993 | 1463 | 1463 |
| 1-4 | Flood Lights | 1993 | 16 | 16 |
| 1-5 | Light Poles | 1993 | 20 | 20 |
| 1-6 | Concrete Paving | 1993 | 750 | 750 |
| 1-7 | Asphalt Paving | 1993 | 28906 | 28906 |

## Valuation

| | Improvements | Land | Total | Assessed Total |
|---|---|---|---|---|
| Agricultural | $0.00 | $0.00 | $0.00 | $0.00 |
| Commercial | $823,474.00 | $580,874.00 | $1,404,348.00 | $449,390.00 |
| Residential | $0.00 | $0.00 | $0.00 | $0.00 |
| Total | | | | $449,390.00 |

Taney County makes no warranties, expressed or implied, as to the use of the data.

Last Data Upload: 9/21/2015 10:42:31 PM

# ⊛Beacon™ Taney County, MO



**Overview**

**Legend**
- ☐ Parcels
-   Roads
- ☐ Lakes
- ☐ Corporate Limits

| | | | |
|---|---|---|---|
| **Parcel ID** | 18-1.0-01-003-001-006.000 | **Alternate ID** n/a | **Owner Address** SURREY VACATION RESORT INC |
| **Sec/Twp/Rng** | 1-22-22 | **Class** n/a | 430 STATE HIGHWAY 165 |
| **Property Address** | 2805 GREEN MOUNTAIN DR | **Acreage** 3.81 | BRANSON MO 65616-3541 |
| **District** | 4CXB | | |
| **Brief Tax Description** | THOUSAND HILLS THOUSAND HILLS LTS 1 & 27 REPLAT LTS 27 TH 43; CIT | | |
| | (Note: Not to be used on legal documents) | | |

Date created: 9/22/2015
Last Data Upload: 9/21/2015 10:42:31 PM

 **Developed by**
Schneider   The Schneider Corporation

 **Beacon**™ Taney County, MO

## Parcel

| | |
|---|---|
| **Parcel ID** | 18-1.0-01-003-002-024.001 |
| **Property Address** | |
| **Tax Code** | 4CXB |
| **Sec/Twp/Rng** | 1/22/22 |
| **Brief** | THOUSAND HILLS - 1ST ADD THOUSAND HILLS - |
| **Tax Description** | 1ST ADD LT 32 REPLAT OF LTS 26 - |
| | (Note: Not to be used on legal documents) |
| **School District** | Branson |
| **Fire District** | N/A |
| **City** | Branson |
| **Deed Book/Page/Date** | 471-1670 (2005-08-17) |

## Owner

SURREY VACATION RESORTS INC
430 STATE HIGHWAY 165
BRANSON, MO 65616-3541

## Land

| | |
|---|---|
| **Lot Dimensions** | 431.74 X 261.69 IRR |
| **Lot Area** | 2.170 Acres |

## Improvements

| Number | Description | Year Built | Base Area | Adjusted Area |
|---|---|---|---|---|
| 1-1 | Strip Store | 2007 | 12186 | 22199 |
| 1-2 | Light Poles | 2007 | 20 | 20 |
| 1-3 | Flood Lights | 2007 | 10 | 10 |
| 1-4 | Override | 2007 | 46591 | 46591 |
| 1-5 | Override | 2007 | 1016 | 1016 |
| 1-6 | Override | 2007 | 275 | 275 |

## Valuation

| | Improvements | Land | Total | Assessed Total |
|---|---|---|---|---|
| **Agricultural** | $0.00 | $0.00 | $0.00 | $0.00 |
| **Commercial** | $788,084.00 | $330,838.00 | $1,118,922.00 | $358,060.00 |
| **Residential** | $0.00 | $0.00 | $0.00 | $0.00 |
| **Total** | | | | $358,060.00 |

Taney County makes no warranties, expressed or implied, as to the use of the data.

Last Data Upload: 9/21/2015 10:42:31 PM

# ⬤Beacon™ Taney County, MO



**Overview**

**Legend**
- ☐ Parcels
- Roads
- ▨ Lakes
- ☐ Corporate Limits

| Parcel ID | 18-1.0-01-003-002-024.001 | Alternate ID | n/a | Owner Address | SURREY VACATION RESORTS INC |
|---|---|---|---|---|---|
| Sec/Twp/Rng | 1-22-22 | Class | n/a | | 430 STATE HIGHWAY 165 |
| Property Address | | Acreage | 2.18 | | BRANSON MO 65616-3541 |
| District | 4CXB | | | | |
| Brief Tax Description | THOUSAND HILLS - 1ST ADD THOUSAND HILLS - 1ST ADD LT 32 REPLAT OF LTS 26 - | | | | |

(Note: Not to be used on legal documents)

Date created: 9/22/2015
Last Data Upload: 9/21/2015 10:42:31 PM

 **Developed by**
The Schneider Corporation

# Beacon™ Taney County, MO

## Parcel

| | |
|---|---|
| Parcel ID | 17-3.0-05-002-010-002.001 |
| Property Address | W STATE HWY 76 |
| Tax Code | 4CXB |
| Sec/Twp/Rng | 5/22/21 |
| Brief Tax Description | CENTRAL PARK CENTRAL PARK LTS 4 TH 7; LTS 29 TH 34; PT LTS 8, 9 |
| | (Note: Not to be used on legal documents) |
| School District | Branson |
| Fire District | N/A |
| City | Branson |
| Deed Book/Page/Date | 489-3131 (2006-04-26) |

## Owner

SURREY VACATION RESORTS INC
430 STATE HIGHWAY 165
BRANSON, MO 65616-3541

## Land

| | |
|---|---|
| Lot Dimensions | 376.89 X 191.69 IRR |
| Lot Area | 2.090 Acres |

## Valuation

| | Improvements | Land | Total | Assessed Total |
|---|---|---|---|---|
| Agricultural | $0.00 | $0.00 | $0.00 | $0.00 |
| Commercial | $0.00 | $273,120.00 | $273,120.00 | $87,400.00 |
| Residential | $0.00 | $0.00 | $0.00 | $0.00 |
| Total | | | | $87,400.00 |

No data available for the following modules: Improvements.

Taney County makes no warranties, expressed or implied, as to the use of the data.

Last Data Upload: 9/21/2015 10:42:31 PM

Developed by
Schneider   The Schneider Corporation

# Beacon™ Taney County, MO



Overview

Legend
☐ Parcels
    Roads
☐ Lakes
☐ Corporate Limits

| | | | | | |
|---|---|---|---|---|---|
| Parcel ID | 17-3.0-05-002-010-002.001 | Alternate ID | n/a | Owner Address | SURREY VACATION RESORTS INC |
| Sec/Twp/Rng | 5-22-21 | Class | n/a | | 430 STATE HIGHWAY 165 |
| Property Address | W STATE HWY 76 | Acreage | 2.09 | | BRANSON MO 65616-3541 |
| District | 4CXB | | | | |
| Brief Tax Description | CENTRAL PARK CENTRAL PARK LTS 4 TH 7; LTS 29 TH 34; PT LTS 8, 9 | | | | |
| | (Note: Not to be used on legal documents) | | | | |

Date created: 9/22/2015
Last Data Upload: 9/21/2015 10:42:31 PM

 Schneider   Developed by
The Schneider Corporation

 **Beacon**™ Taney County, MO

## Parcel

| | |
|---|---|
| Parcel ID | 18-1.0-01-004-002-004.000 |
| Property Address | GOLF VIEW DR |
| Tax Code | 4CXB |
| Sec/Twp/Rng | 1/22/22 |
| Brief | THOUSAND HILLS 1ST ADDN THOUSAND HILLS |
| Tax Description | 1ST ADDN PT LT 2 IN SE4 CITY OF BRA |
| | (Note: Not to be used on legal documents) |
| School District | Branson |
| Fire District | N/A |
| City | Branson |
| Deed Book/Page/Date | 2011-37693 (2011-08-31) |

## Owner

SURREY VACATION RESORTS INC
430 STATE HWY 165 #C
BRANSON, MO 65616-

## Land

| | |
|---|---|
| Lot Dimensions | |
| Lot Area | 7.100 Acres |

## Valuation

| | Improvements | Land | Total | Assessed Total |
|---|---|---|---|---|
| Agricultural | $0.00 | $0.00 | $0.00 | $0.00 |
| Commercial | $0.00 | $0.00 | $0.00 | $0.00 |
| Residential | $0.00 | $137,456.00 | $137,456.00 | $26,120.00 |
| Total | | | | $26,120.00 |

**No data available for the following modules:** Improvements.

Taney County makes no warranties, expressed or implied, as to the use of the data.

Last Data Upload: 9/21/2015 10:42:31 PM

 **Developed by**
The Schneider Corporation

# ⚫Beacon™ Taney County, MO



Overview

Legend
- ☐ Parcels
- ⋯ Roads
- ▨ Lakes
- ☐ Corporate Limits

374 ft

| | | | | |
|---|---|---|---|---|
| **Parcel ID** | 18-1.0-01-004-002-004.000 | **Alternate ID** n/a | **Owner Address** | SURREY VACATION RESORTS INC |
| **Sec/Twp/Rng** | 1-22-22 | **Class** n/a | | 430 STATE HWY 165 #C |
| **Property Address** | GOLF VIEW DR | **Acreage** 7.1 | | BRANSON MO 65616- |
| **District** | 4CXB | | | |
| **Brief Tax Description** | THOUSAND HILLS 1ST ADDN THOUSAND HILLS 1ST ADDN PT LT 2 IN SE4 CITY OF BRA | | | |
| | (Note: Not to be used on legal documents) | | | |

Date created: 9/22/2015
Last Data Upload: 9/21/2015 10:42:31 PM

 **Developed by**
Schneider  The Schneider Corporation

 **Beacon**™ Taney County, MO

## Parcel

| | |
|---|---|
| Parcel ID | 18-1.0-01-003-002-031.000 |
| Property Address | |
| Tax Code | 4CXB |
| Sec/Twp/Rng | 1/22/22 |
| Brief Tax Description | THOUSAND HILLS THOUSAND HILLS LT 2 SW4 SEC 1; CITY OF BRANSON |
| | (Note: Not to be used on legal documents) |
| School District | Branson |
| Fire District | N/A |
| City | Branson |
| Deed Book/Page/Date | 351-8710 (1998-05-05) |

## Owner

SURREY VACATION RESORTS INC
430 STATE HIGHWAY 165 STE C
BRANSON, MO 65616-3541

## Land

| | |
|---|---|
| Lot Dimensions | 245 X 652.2 IRR |
| Lot Area | 3.660 Acres |

## Valuation

| | Improvements | Land | Total | Assessed Total |
|---|---|---|---|---|
| Agricultural | $0.00 | $0.00 | $0.00 | $0.00 |
| Commercial | $0.00 | $0.00 | $0.00 | $0.00 |
| Residential | $0.00 | $137,616.00 | $137,616.00 | $26,150.00 |
| Total | | | | $26,150.00 |

No data available for the following modules: Improvements.

Taney County makes no warranties, expressed or implied, as to the use of the data.

Last Data Upload: 9/21/2015 10:42:31 PM

**Schneider**    Developed by
The Schneider Corporation

# ⬤Beacon™ Taney County, MO



**Overview**

**Legend**
- ☐ Parcels
- Roads
- ☐ Lakes
- ☐ Corporate Limits

| | | | | |
|---|---|---|---|---|
| Parcel ID | 18-1.0-01-003-002-031.000 | Alternate ID | n/a | Owner Address  SURREY VACATION RESORTS INC |
| Sec/Twp/Rng | 1-22-22 | Class | n/a | 430 STATE HIGHWAY 165 STE C |
| Property Address | | Acreage | 3.66 | BRANSON MO 65616-3541 |
| District | 4CXB | | | |
| Brief Tax Description | THOUSAND HILLS THOUSAND HILLS LT 2 SW4 SEC 1; CITY OF BRANSON | | | |

(Note: Not to be used on legal documents)

Date created: 9/22/2015
Last Data Upload: 9/21/2015 10:42:31 PM

  Developed by
Schneider   The Schneider Corporation



This sales agreement is made between (Legal and dba name required)  Surrey Vacation Resorts INC DBA Grand Crowne Resorts_ ("Client"), located at

430 C State Hwy 165 South, Branson MO 65616 and Wahoo Ziplines with mailing address at PO Box 6127, Sevierville, TN  37764 at GPS Location at

1200 Matthews Hollow Road, Sevierville, TN  37876.

**This agreement is effective through May 31, 2016.**

1.  Subject to the terms and conditions of this agreement, Client desires to sell pre-approved tickets/vouchers to individuals, group travelers, or as part of a vacation package, which can be redeemed for admission(s) to Wahoo Ziplines in Sevierville, Tennessee,

2.  After credit approval, Wahoo Ziplines shall bill back Client for each ticket/ voucher redeemed at Wahoo Ziplines at the following discounted rates:

## Prices Valid January 1, 2015 – May 31, 2016 Only

**Wahoo Ziplines:** This is a guided tour-- customers meet greeters along their way and move at their own pace.

All People (ages 5 and older) Your Inclusive Price **$40.00\*** each ticket/voucher = **$101.36\*** each inclusive (Rack Rate & Tax)

*\*All prices are subject to applicable taxes, currently at 2.60% Amusement Tax, 2.75 City Tax and 7% State Sales Tax. Taxes are included above.*

3.  "Wahoo Ziplines" reserves the right to change prices with 30 days advance notice, but guarantees the same discount percentages for the term of this agreement. "Wahoo Ziplines" also reserves the right to limit the amount of voucher admissions Client may issue at discounted rates during the term of this agreement.

4.  Client shall maintain all licenses, permits and permissions from all governmental and quasi-governmental entities necessary or appropriate for it to conduct its business and to perform its obligations under this agreement.  Client shall comply with all laws, rules, and regulations applicable to such conduct and performance.

5.  Client agrees it may not sell vouchers or tickets to "Wahoo Ziplines" within 200 yards of the attraction, without the express written permission from "Wahoo Ziplines".

6.  Client agrees to include in its promotional and advertising materials information about ticket/voucher availability to the attraction "Wahoo Ziplines". All promotional, marketing or advertising materials which depict or mention "Wahoo Ziplines" or the ticket vouchers to the attraction, or contain any copyrighted or otherwise protected artwork or other material belonging to "Wahoo Ziplines", or its affiliated companies, shall be subject to prior written approval in each instance as used.  Any use or reproduction of names, artwork or other material copyrighted, registered or otherwise legally protected by "Wahoo Ziplines" or its affiliated companies, must bear the appropriate notice.  Client is solely responsible for ensuring that any packages or promotions including a reference to ticket vouchers to and/or "Wahoo Ziplines" will comply with all applicable laws, rules and regulations.

7.  Full payment is due within 15 days of billing.  Billing dates are at the discretion of "Wahoo Ziplines" unless otherwise agreed upon in writing. Payment not received by due date may result in credit suspension and tickets/voucher(s) not honored by the attraction.  After 30 days past due a fee of two percent (2%) per month (an annual rate of twenty-four percent (24%), or the highest rate allowed by law if that rate is lower, will be assessed to any past due amounts.

☐ Check this box if different payment rules apply – _____

8.  Except as otherwise expressly permitted by this agreement, Client shall acquire no right under this agreement to use the names, artwork, designs, trademarks, trade names or copyrights belonging to "Wahoo Ziplines" or its affiliated companies.

9.  Prior to start of program, Client must provide copies of its vouchers to "Wahoo Ziplines" for approval.  All approved vouchers issued by Client must include <u>date of voucher issue</u>, <u>number of adult and child guests</u> to be admitted by voucher, <u>name of issuer</u> and <u>expiration date no later than 365 days from issue</u>.

10.  This agreement is made in, and shall be governed by, the laws of the State of Missouri.  Any dispute, difference, claim, counterclaim or legal action between "Wahoo Ziplines" and Client shall be maintained exclusively in the Circuit Court in and for Sevier County, Tennessee.  If the Circuit Court shall not have jurisdiction over the subject matter, then to such other court setting in Sevier County and having subject matter jurisdiction.

11.  Client assumes full responsibility for any of its actions related to the sales, advertisement, marketing of promotion of ticket/vouchers to the attraction "Wahoo Ziplines".  Client shall defend (if so requested by "Wahoo Ziplines" and with counsel selected by "Wahoo Ziplines", indemnify and hold "Wahoo Ziplines", all other "Wahoo Ziplines" companies and affiliates, and the officers, directors, agents, employees and assigns of each of the foregoing, harmless from and against any and all losses, liabilities, claims, suits, judgments, costs and expenses of any nature whatsoever

PO Box 6127, Sevierville, TN  37864 * Phone: 865-366-1111 *  www.WahooZiplines.com



2015 Agreement
Wahoo Ziplines
Ticket/Voucher Program

(including, without limitation, attorney's fees and costs) arising or resulting from or relating to, directly or indirectly, any of the following: (a) the sale, advertisement, marketing or promotion of the vouchers by Client; (b) the sale, advertisement, marketing or promotion by any person or entity of vouchers issued by Client; (c) any act of omission of Client or its officers, directors, agents or employees; or (d) any failure of Client to comply with its obligations under this Agreement. The provisions of this Paragraph shall survive the expiration or sooner termination of this Agreement.

12. Neither this agreement nor any right or obligation contained in this agreement may be assigned by Client in any fashion. If Client defaults under any material obligation contained in this agreement, "Wahoo Ziplines" may terminate this agreement. Either party may terminate this agreement with 15 days advance, written notice to the other party. Payment in full is due upon termination by client.

13. Any notices, requests or other communications required or permitted to be given hereunder shall be in writing and shall be delivered by a widely recognized national overnight courier service (subject to a written confirmation thereof) or mailed by United States registered or certified mail, return receipt requested, postage prepaid and addressed to each party at the addresses of the parties noted on the first page of this agreement. In addition, and not in lieu of, the preceding notice, facsimile transmission should be sent to:

_Surrey Vacation Resorts, Inc._
**Client name:**

_drcvpc @ gcrvacations. com_
**Client Email Address:**

_480-C State Hwy 165 S._
**Mailing address:** _Branson, MO 65616_

_417-332-8354_          _417-332-8390_
**Fax number:**          **Phone Number:**

WAHOO ZIPLINES
"Wahoo Ziplines" Sales Department
PO Box 6127
Sevierville, TN 37864

865-366-1111
**Phone Number**

Any such notice, request or other communication shall be considered given or delivered, as the case may be, on the date of deposit with the overnight courier or upon deposit in the United States mail as provided above. Rejection or other refusal to accept or inability to deliver because of change address of which no notice was given shall be deemed to be receipt of the notice, request or other communication. By giving at least five (5) days prior written notice thereof, either party may from time to time at any time change it's mailing address hereunder.

14. In the event any party shall be required to commence any action or proceeding against the other party by reason of any breach or claimed breach of any provisions of this Agreement, to commence any action or proceeding in any way connected with the Agreement, or to seek a judicial declaration of rights under this Agreement, the party prevailing in such action or proceeding shall be entitled to recover from the other party, or to be reimbursed, the prevailing party's reasonable attorney's fees and costs, including, but not limited to, expert witness fees, witness fees, and any and all other fees and costs, whether or not the proceeds to judgment.

15. If the performance by either party of any non-monetary obligation under this agreement is delayed or prevented, in whole or in part, by any cause not reasonably within its control, it shall be excused, discharged and released from performance to the extent such performance is so limited or prevented without liability of any kind. These causes include, without limitation, acts of God, war civil disturbances, accidents, damage to its facilities, labor disputes, acts of any governmental body, or failure or delay of third parties.

16. Nothing contained in this agreement authorizes, empowers or constitutes either party as agent of the other party. Neither party can assume or create any obligation or responsibility on behalf of or in the name of the other party. Neither party can bind the other party in any manner or make any representation, warranty, covenant, agreement or commitment on behalf of the other.

17. This agreement constitutes the entire agreement of the parties with respect to the subject matter of this agreement. No change, addition, amendment or modification of this agreement shall be effective unless in writing and signed by both parties.

Surrey Vacation Resorts INC DBA Grand Crowne Resorts
**Company**

_[signature]_
**Authorized Signature**

_DAVID CURIS_
**Name Printed**

_General Counsel_
**Title**

_3/60/15_
**Date**

Wahoo Ziplines
**Company**

_[signature]_
**Authorized Signature**

_Jeff Emmons_
**Name Printed**

_CEO_
**Title**

_3/18/15_
**Date**

PO Box 6127, Sevierville, TN 37864 * Phone: 865-366-1111 * www.WahooZiplines.com



Please fill out the information below so we can better serve you.  If you have any questions
please feel free to call Diana Fuller at 865-230-4223.

## Contact information:

FIT/Individual voucher sales:

Name: Kim Steinberg/Missy Davis

Phone: Kim417-332-8375 / Missy417-332-8495   _Fax_417-334-2820_

Email: Kim: kasteinberg@GCRVacations.com/ Missy mdavis@GCRVacations.com

Group sales: (if applicable)

Name:_____

Phone:_____Fax_____

Email:_____

Accounting:

Name:_Matthew Spaniger

Phone:417-332-8344_   Fax_417-334-2820

Email:accountspayable@GCRVacations.com

Webmaster or person to contact regarding your website: (if applicable)

Name:_____
Phone:_____Fax_____
Email:_____

FIT Location Selling Price:

Please list the inclusive price you will gift / sell Wahoo Ziplines Tickets/Vouchers at your
locations.
        Person 5+ years old  $_____

*Note Wahoo Ziplines Tickets/Vouchers may not be sold at a rate higher than
our Box-office Rate  _____  Initial

Please list all FIT locations (if applicable -- You may include a separate sheet.)

_____

_____

PO Box 6127, Sevierville, TN  37864 * Phone: 865-366-1111 * www.WahooZiplines.com

## ADDENNDUM TO F.I.T. AGREEMENT

THIS ADDENDUM TO F.I.T. AGREEMENT ("Addendum") is made and entered into as of the 10th day of March 2015 ("Effective Date"), by and between Surrey Vacation Resorts, Inc. d/b/a The Lodges at the Great Smoky Mountains ("SVR") and Wahoo Ziplines TN, LLC ("Seller").  SVR and Seller are sometimes referred to as a "Party" or jointly referred to as the "Parties."

WHEREAS, the Parties have entered into a 2015 F.I.T. Agreement ("Agreement").

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.    The above recitals are true and correct and are incorporated herein by this reference.

2.    This Addendum shall be effective as of the Effective Date.

3.    Paragraphs 18 and 19 are hereby added to the Agreement as follows:

6.    **Insurance, Waiver and Release.**   Seller agrees to carry general liability insurance of at least $1,000,000 single occurrence ($2,000,000 aggregate), auto liability insurance of at least $1,000,000, Employer's liability insurance of at least $1,000,000/$1,000,000/$1,000,000, and worker's compensation coverage for Seller's employee(s) to the extent required by law, and if required by law, in such amounts as thereby required. Seller shall provide SVR with a copies of all insurance policies. Insurance shall be written by insurance companies licensed /authorized to do business in the state(s) where the tickets are being sold and the services are being provided. The insurance companies shall have an AM Best Rating of A-VIII or better.  Seller's policies shall be primary and non-contributory and include Waiver of Subrogation against SVR, any and all affiliated and subsidiary companies, officers, agents and employees. All policies, with the exception of Workers' Compensation, shall! include SVR and Capital Resorts Group, LLC, and any and all of their affiliated and subsidiary companies, their officers, agents and employees as additional insured. All Certificates of Insurance shall provide 30 days notice, to SVR, in the event of any cancellation, non renewal or material change and/or reduction in coverage. In the event Seller is not required by law to carry worker's compensation insurance in connection with delivery of the Services, and if Seller chooses not to obtain and maintain such coverage, **SELLER FOREVER AGREES TO WAIVE, RELEASE AND RELINQUISH ANY AND ALL CLAIMS AND CAUSES OF ACTION FOR PROPERTY DAMAGE, PERSONAL INJURY AND/OR DEATH THAT MAY BE SUSTAINED BY SELLER OR ANY OF ITS EMPLOYEES, REPRESENTAIVES AND/OR AGENTS IN CONNECTION WITH THIS AGREEMENT OR THE SERVICES.**

7.    **INDEMINTY. SELLER AGREES TO FULLY AND COMPLETELY INDEMNIFY SVR AND CAPITAL RESORTS GROUP, LLC, AND THEIR RESPECTIVE SUBSIDIARIES, AFFILIATES, AND EACH OF THEIR RESPECTIVE AGENTS, EMPLOYEES OFFICERS, DIRECTORS AND REPRESENTATIVES, AND TO HOLD EACH OF THEM HARMLESS FROM AND AGAINST ANY AND ALL DAMAGES, CLAIMS, COSTS, CAUSES OF ACTION, DEMANDS, LIABILITIES, PENALTIES, FINES, SANCTIONS AND EXPENSES, INCLUDING, BUT NOT LIMITED TO, ATTORNEY'S FEES AND COSTS OF SUIT THROUGH AND INCLUDING ANY APPEAL(S) ARISING OUT OF, OR IN CONNECTION WITH: (A) THE SERVICES**

AND/OR DELIVERY OF THE SERVICES PROVIDED HEREUNDER; (B) THE ACTUAL OR ALLEGED NEGLIGENCE, GROSS NEGLIGENCE AND/OR MISCONDUCT BY SELLER, ITS EMPLOYEES, OR ITS AGENTS; (B) THE ACTUAL OR ALLEGED BREACH BY SELLER OF THIS AGREEMENT OR ANY OF ITS TERMS, OR ANY OTHER AGREEMENT BY AND BETWEEN SELLER AND SVR, WHETHER WRITTEN OR ORAL.

4.      Except as expressly indicated to the contrary or otherwise defined in this Addendum, all capitalized terms used herein shall have the same meanings ascribed to them in the Agreement.   Where there is a conflict between the terms and provisions of this Addendum and the Agreement, this Addendum shall prevail.   Except as expressly provided herein, all other terms and conditions of the Agreement shall remain in full force and effect and shall be applied to and made a part of this Addendum.

5.      Each Party represents and warrants that the person executing this Addendum on its behalf is duly authorized to do so and its execution of this Addendum and its performance hereunder is binding upon such Party and will not conflict with or result in a breach of any provision of any other agreement, charter, bylaw, or other instrument to which such Party may be bound.

IN WITNESS WHEREOF, the Parties have executed this Addendum as of the Effective Date.

"SVR"

Surrey Vacation Resorts, Inc. d/b/a The
Lodges at the Great Smoky Mountains

By: _____
        David Cope, General Counsel

"SELLER"

Wahoo Ziplines TN, LLC

By: _____

Print Name: _____

Title: _____

2014 Agreement
Wahoo Ziplines
Ticket/Voucher Program

EXHIBIT
C
_____



Surrey Vacation Resorts, Inc.
d/b/a The Lodges at
The Great Smoky Mountains

This sales agreement is made between (Legal and dba name required) _____ ("Client"),
PHYSICAL ADDRESS: 222 Whistling Wind Way, Pigeon Forge, TN 37863
located at MAILING ADDRESS: 430C State HWY 165 South, BRONSON MO 65616 _____ and Wahoo Ziplines with offices at 605

Stockton Road, Sevierville, TN 37876.

**This agreement is effective through December 31, 2014.**

1.   Subject to the terms and conditions of this agreement, Client desires to sell pre-approved tickets/vouchers to individuals, group travelers, or as part of a vacation package, which can be redeemed for admission(s) to Wahoo Ziplines in Sevierville, Tennessee.

2.   After credit approval, Wahoo Ziplines shall bill back Client for each ticket/ voucher redeemed at Wahoo Ziplines at the following discounted rates:

## Prices Valid January 1, 2014 – December 31, 2014 Only

**Wahoo Ziplines:**  This is a guided tour– customers meet greeters along their way and move at their own pace.

All People (ages 5 and older) Your inclusive Price ***$38.00\**** each ticket/voucher, **$99.90\*** each inclusive (Rack Rate & Tax)

*\*All prices are subject to applicable taxes, currently at 2.50% Amusement Tax, 2.75 City Tax and 7% State Sales Tax.  Taxes are included above.*

3.   "Wahoo Ziplines" reserves the right to change prices with 30 days advance notice, but guarantees the same **discount percentages** for the term of this agreement.  "Wahoo Ziplines" also reserves the right to limit the amount of voucher admissions Client may issue at discounted rates during the term of this agreement.

4.   Client shall maintain all licenses, permits and permissions from all governmental and quasi-governmental entities necessary or appropriate for it to conduct its business and to perform its obligations under this agreement.  Client shall comply with all laws, rules, and regulations applicable to such conduct and performance.

5.   Client agrees it may not sell vouchers or tickets to "Wahoo Ziplines" within 200 yards of the attraction, without the express written permission from "Wahoo Ziplines".

6.   Client agrees to include in its promotional and advertising materials information about ticket/voucher availability to the attraction "Wahoo Ziplines". All promotional, marketing or advertising materials which depict or mention "Wahoo Ziplines" or the ticket vouchers to the attraction, or contain any copyrighted or otherwise protected artwork or other material belonging to "Wahoo Ziplines", or its affiliated companies, shall be subject to prior written approval in each instance as used.  Any use or reproduction of names, artwork or other material copyrighted, registered or otherwise legally protected by "Wahoo Ziplines" or its affiliated companies, must bear the appropriate notice.  Client is solely responsible for ensuring that any packages or promotions including a reference to ticket vouchers to and/or "Wahoo Ziplines" will comply with all applicable laws, rules and regulations.

7.   Full payment is due within 15 days of billing.  Billing dates are at the discretion of "Wahoo Ziplines" unless otherwise agreed upon in writing. Payment not received by due date may result in credit suspension and tickets/voucher(s) not honored by the attraction.  After 30 days past due a fee of two percent (2%) per month (an annual rate of twenty-four percent (24%), or the highest rate allowed by law if that rate is lower, will be assessed to any past due amounts.

☐ Check this box if different payment rules apply – _____

8.   Except as otherwise expressly permitted by this agreement, Client shall acquire no right under this agreement to use the names, artwork, designs, trademarks, trade names or copyrights belonging to "Wahoo Ziplines" or its affiliated companies.

9.   Prior to start of program, Client must provide copies of its vouchers to "Wahoo Ziplines" for approval.  All approved vouchers issued by Client must include <u>date of voucher issue</u>, <u>number of adult and child guests</u> to be admitted by voucher, <u>name of issuer</u> and <u>expiration date no later than 365 days from issue</u>.

10.  This agreement is made in, and shall be governed by, the laws of the State of Missouri.  Any dispute, difference, claim, counterclaim or legal action between "Wahoo Ziplines" and Client shall be maintained exclusively in the Circuit Court in and for Sevier County, Tennessee.  If the Circuit Court shall not have jurisdiction over the subject matter, then to such other court setting in Sevier County and having subject matter jurisdiction.

11.  Client assumes full responsibility for any of its actions related to the sales, advertisement, marketing of promotion of ticket/vouchers to the attraction "Wahoo Ziplines".  Client shall defend (if so requested by "Wahoo Ziplines" and with counsel selected by "Wahoo Ziplines"), indemnify and hold "Wahoo Ziplines", all other "Wahoo Ziplines" companies and affiliates, and the officers, directors, agents, employees and assigns of each of the foregoing, harmless from and against any and all losses, liabilities, claims, suits, judgments, costs and expenses of any nature whatsoever

(including, without limitation, attorney's fees and costs) arising or resulting from or relating to, directly or indirectly, any of the following: (a) the sale, advertisement, marketing or promotion of the vouchers by Client; (b) the sale, advertisement, marketing or promotion by any person or entity of vouchers issued by Client; (c) any act of omission of Client or its officers, directors, agents or employees; or (d) any failure of Client to comply with its obligations under this Agreement. The provisions of this Paragraph shall survive the expiration or sooner termination of this Agreement.

12.  Neither this agreement nor any right or obligation contained in this agreement may be assigned by Client in any fashion.  If Client defaults under any material obligation contained in this agreement, "Wahoo Ziplines" may terminate this agreement. Either party may terminate this agreement with 15 days advance, written notice to the other party.  Payment in full is due upon termination by client.

13.  Any notices, requests or other communications required or permitted to be given hereunder shall be in writing and shall be delivered by a widely recognized national overnight courier service (subject to a written confirmation thereof) or mailed by United States registered or certified mail, return receipt requested, postage prepaid and addressed to each party at the addresses of the parties noted on the first page of this agreement.  In addition, and not in lieu of, the preceding notice, facsimile transmission should be sent to:

Surrey Vacation Resorts, Inc.
d/b/a The Lodges at
The Great Smoky Mountains

Client name:

Client Email Address: mbrowning@prvacations

Mailing address: 430 C S HWY 165S BRANSON    1050/016

Fax number: 417 334 2830    Phone Number: 332 8414

WAHOO ZIPLINES
"Wahoo Ziplines" Sales Department
605 Stockton Road
Sevierville, TN 37876

865-366-1111
Phone Number

Any such notice, request or other communication shall be considered given or delivered, as the case may be, on the date of deposit with the overnight courier or upon deposit in the United States mail as provided above.  Rejection or other refusal to accept or inability to deliver because of change of address of which no notice was given shall be deemed to be receipt of the notice, request or other communication.  By giving at least five (5) days prior written notice thereof, either party may from time to time at any time change it's mailing address hereunder.

14.  In the event any party shall be required to commence any action or proceeding against the other party by reason of any breach or claimed breach of any provisions of this Agreement, to commence any action or proceeding in any way connected with the Agreement, or to seek a judicial declaration of rights under this Agreement, the party prevailing in such action or proceeding shall be entitled to recover from the other party, or to be reimbursed, the prevailing party's reasonable attorney's fees and costs, including, but not limited to, expert witness fees, witness fees, and any and all other fees and costs, whether or not the proceeds to judgment.

15.  If the performance by either party of any non-monetary obligation under this agreement is delayed or prevented, in whole or in part, by any cause not reasonably within its control, it shall be excused, discharged and released from performance to the extent such performance is so limited or prevented without liability of any kind.  These causes include, without limitation, acts of God, war civil disturbances, accidents, damage to its facilities, labor disputes, acts of any governmental body, or failure or delay of third parties.

16.  Nothing contained in this agreement authorizes, empowers or constitutes either party as agent of the other party.  Neither party can assume or create any obligation or responsibility on behalf of or in the name of the other party.  Neither party can bind the other party in any manner or make any representation, warranty, covenant, agreement or commitment on behalf of the other.

17.  This agreement constitutes the entire agreement of the parties with respect to the subject matter of this agreement.  No change, addition, amendment or modification of this agreement shall be effective unless in writing and signed by both parties.

Surrey Vacation Resorts, Inc.
d/b/a The Lodges at
The Great Smoky Mountains

Company

Authorized Signature

Name Printed  ALEX HODGES

Title  COO

Date

Wahoo Ziplines

Company

Authorized Signature

Name Printed

Title

Date

2014 Agreement
Wahoo Ziplines
Ticket/Voucher Program



Please fill out the information below so we can better serve you. If you have any questions
please feel free to call Diana Fuller at 865-230-4223.

## Contact information:

**Surrey Vacation Resorts, Inc.**
**d/b/a The Lodges at**
**The Great Smoky Mountains**

FIT/Individual voucher sales:

Name: JACQUELINE WEINBERG

Phone: 417 332 8414   Fax 334 2820

Email: jrbrowning@cprvacations.com

Group sales: (if applicable)

Name:_____

Phone:_____N/A Fax_____

Email:_____

Accounting:

Name: MATTHEW SPANGLER

Phone: 417 332 8315   Fax 334 2820

Email: MSpangler@cprvacations.com

Webmaster or person to contact regarding your website: (if applicable)

Name: CHRIS HUTCHISON
Phone: 417 332 8213   Fax 334 2820
Email: CWHutchison@cprvacations.com

FIT Location Selling Price:

Please list the inclusive price you will gift / sell Wahoo Ziplines Tickets/Vouchers at your
locations.
            Person 5+ years old  $_____

*Note Wahoo Ziplines Tickets/Vouchers may not be sold at a rate higher than
our Box-office Rate _____ Initial

Please list all FIT locations (if applicable – You may include a separate sheet.)

_____

_____

605 Stockton Road, Sevierville, TN 37876 * Phone: 865-366-1111 * www.WahooZiplines.com

## ADDENNDUM TO SALES AGREEMENT

## 2014 WAHOO ZIPLINES TICKET/VOUCHER PROGRAM

THIS ADDENDUM TO SALES AGREEMENT ("Addendum") is made and entered into as of the _____ day of _____ 201___ ("Effective Date"), by and between Surrey Vacation Resorts, Inc. d/b/a The Lodges at the Great Smoky Mountains ("SVR") and Wahoo Ziplines TN, LLC ("Seller"). SVR and Seller are sometimes referred to as a "Party" or jointly referred to as the "Parties."

WHEREAS, the Parties have entered into a 201___ Sales Agreement ("Agreement"), effective as of the _____, 2014;

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.    The above recitals are true and correct and are incorporated herein by this reference.

2.    This Addendum shall be effective as of the Effective Date.

3.    Paragraphs 18 and 19 are hereby added to the Agreement as follows:

    **18.    Insurance, Waiver and Release.**    Seller agrees to carry general liability insurance of at least $1,000,000 single occurrence ($2,000,000 aggregate), auto liability insurance of at least $1,000,000, Employer's liability insurance of at least $1,000,000/$1,000,000/$1,000,000, and worker's compensation coverage for Seller's employee(s) to the extent required by law, and if required by law, in such amounts as thereby required. Seller shall provide SVR with a copies of all insurance policies. Insurance shall be written by insurance companies licensed /authorized to do business in the state(s) where the tickets are being sold and the services are being provided. The insurance companies shall have an AM Best Rating of A-VIII or better. Seller's policies shall be primary and non-contributory and include Waiver of Subrogation against SVR, any and all affiliated and subsidiary companies, officers, agents and employees. All policies, with the exception of Workers' Compensation, shall include SVR and any and all of its affiliated and subsidiary companies, their officers, agents and employees as additional insured. All Certificates of Insurance shall provide 30 days notice, to SVR, in the event of any cancellation, non renewal or material change and/or reduction in coverage. In the event Seller is not required by law to carry worker's compensation insurance in connection with delivery of the Services, and if Seller chooses not to obtain and maintain such coverage, **SELLER FOREVER AGREES TO WAIVE, RELEASE AND RELINQUISH ANY AND ALL CLAIMS AND CAUSES OF ACTION FOR PROPERTY DAMAGE, PERSONAL INJURY AND/OR DEATH THAT MAY BE SUSTAINED BY SELLER OR ANY OF ITS EMPLOYEES, REPRESENTAIVES AND/OR AGENTS IN CONNECTION WITH THIS AGREEMENT OR THE SERVICES.**

    **19.    INDEMINTY. SELLER AGREES TO FULLY AND COMPLETELY INDEMNIFY SELLER, ITS SUBSIDIARIES, AFFILIATES, AND EACH OF THEIR RESPECTIVE AGENTS, EMPLOYEES OFFICERS, DIRECTORS AND REPRESENTATIVES, AND TO HOLD EACH OF THEM HARMLESS FROM AND AGAINST ANY AND ALL DAMAGES, CLAIMS, COSTS, CAUSES OF ACTION, DEMANDS, LIABILITIES, PENALTIES, FINES, SANCTIONS AND EXPENSES, INCLUDING, BUT NOT LIMITED TO, ATTORNEY'S FEES AND COSTS OF SUIT THROUGH AND INCLUDING ANY**

APPEAL(S) ARISING OUT OF, OR IN CONNECTION WITH: (A) THE SERVICES AND/OR DELIVERY OF THE SERVICES PROVIDED HEREUNDER; (B) THE ACTUAL OR ALLEGED NEGLIGENCE, GROSS NEGLIGENCE AND/OR MISCONDUCT BY SELLER, ITS EMPLOYEES, OR ITS AGENTS; (B) THE ACTUAL OR ALLEGED BREACH BY SELLER OF THIS AGREEMENT OR ANY OF ITS TERMS, OR ANY OTHER AGREEMENT BY AND BETWEEN SELLER AND SVR, WHETHER WRITTEN OR ORAL.

4.     Except as expressly indicated to the contrary or otherwise defined in this Addendum, all capitalized terms used herein shall have the same meanings ascribed to them in the Agreement.   Where there is a conflict between the terms and provisions of this Addendum and the Agreement, this Addendum shall prevail.   Except as expressly provided herein, all other terms and conditions of the Agreement shall remain in full force and effect and shall be applied to and made a part of this Addendum.

5.     Each Party represents and warrants that the person executing this Addendum on its behalf is duly authorized to do so and its execution of this Addendum and its performance hereunder is binding upon such Party and will not conflict with or result in a breach of any provision of any other agreement, charter, bylaw, or other instrument to which such Party may be bound.

IN WITNESS WHEREOF, the Parties have executed this Addendum as of the Effective Date.


"SVR"                                                                    "SELLER"

Surrey Vacation Resorts, Inc. d/b/a                Wahoo Ziplines TN, LLC
The Lodges at the Great Smoky Mountains


By: _____                        By:_____

Print Name: Alex Hodges                              Print Name:_____

Title: C. O. O.                                      Title:_____

Date:_ _____                       Date_____



< Messages (1)  **Kent**                    Details

> Kent- you are involved with Wahoo. Everyone knows that

I am a minority shareholder in wahoo.

> You signed their contract as CEO

Yes and I'm a minority shareholder

Today 12:16 PM

If Alex is planning on filing a suit let me know so that I can arrange time to meet your serviceperson I will be traveling for the next few weeks.



EXHIBIT
D

 Text Message                    Send

## MARKETING AGREEMENT

THIS MARKETING AGREEMENT ("Agreement") is entered into the 1st day of January, 2014 (the "**Effective Date**"), by and between **Surrey Vacation Resorts, Inc.**, d/b/a **Grand Crowne Resorts**, a Missouri corporation having a principal address of 430-C State Highway 165 South, Branson, Missouri 65616 (hereinafter "**SVR**"), and **Kent Direct, Inc.**, a Nevada co having a principal address of 9663 Santa Monica Blvd., #669, Beverly Hills, CA 90210 ("**Marketer**"). This Agreement and all attached Exhibits are jointly referred to herein as the "**Agreement**". SVR and Marketer are each singularly referred to herein as a "**Party**" and are collectively referred to herein as the "**Parties**".

## RECITALS

WHEREAS, SVR is a corporation organized under the laws of the State of Missouri and is engaged in the business of developing, operating, and marketing and selling timeshare intervals at its timeshare projects in Pigeon Forge, TN, and Branson, MO (each singularly referred to herein as a "**Sales Site**" and collectively together as the "**Sales Sites**");

WHEREAS, SVR markets its timeshare projects by a variety of methods, including but not limited to, the use of radio stations, welcome centers, and independent contractor marketing companies;

WHEREAS, Marketer operates as an independent contractor specializing in radio station programming and generating potential consumer sales prospects for timeshare developers; and

WHEREAS, the parties desire to enter into an agreement with respect to potential qualified sales prospects that Marketer will generate for the benefit of SVR, all as more fully set forth herein.

NOW THEREFORE, in consideration of the mutual benefits, obligations, terms and conditions set forth in the Agreement, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the Parties, the Parties hereby agree as follows:

1. **Incorporation of Recitals.**  The recitals set forth above are restated in their entirety and fully incorporated herein.

2. **Definitions.**

   (a) "Consumer Prospect" shall mean a potential sales prospect generated by Marketer for the benefit of SVR.

   (b) "Premium" shall mean any items of value being offered to a Consumer Prospect at one of the Welcome Centers as an inducement to attend an SVR Sales Presentation (as hereinafter defined).

   (c) "Qualified Prospect" shall mean a Consumer Prospect generated by Marketer who is scheduled to tour at one of the Welcome Centers (as hereinafter defined) and completes a Sales Presentation (as hereinafter defined) at one of the Sales Sites and meets the qualifications set forth on **Exhibit "A"**, a copy of which is attached hereto and incorporated by reference.

   (d) "Radio Stations" shall mean the KLFJ Radio transmitting from Springfield, MO and WSEV radio transmitting from Sevierville, TN.

   (e) "Sales Presentation" shall mean an approximately 90 to 120 minute SVR timeshare sales presentation.

   (f) "Welcome Centers" shall mean that certain welcome center commonly known as Exit 407 Welcome Center located at 3139 Winn Field Dunn Parkway, Suite B, Kodak, TN 37764 and that certain welcome center commonly known as CC Exit Welcome Center located at CC – 5571 N 21st St., Ozark, MO 65721.

3. **Term of Agreement.**  The term of this Agreement shall commence on the Effective Date and shall continue for one (1) year, unless earlier terminated pursuant to Paragraph 12 hereof ("**Term**").



EXHIBIT

E

Initials

4.   **Representations of SVR.**  SVR is duly organized and validly existing under the laws of Missouri, and has full authority to enter into this Agreement and to transact the business herein contemplated.

5.   **Representations of Marketer.**

(a)   Marketer represents and warrants that it is (i) duly organized and has full authority to enter into this Agreement and to transact the business herein contemplated, (ii) fully willing, capable and experienced to perform as provided for herein, (iii) is duly authorized and licensed to sell the merchandise at the Welcome Centers, (iv) not prohibited from entering into this Agreement by any contract or agreement that Marketer may have with any third party, (v) neither the Radio Stations, nor any content or program infringes or otherwise violates any copyright, patent, trademark, trade secret or other intellectual property right of any third party, and (vi) as of the date of this Agreement, Marketer has not received notice of any claim from a third party that any content or programming, or any portion thereof, infringes any intellectual property right of any third party.

(b)   Marketer represents and warrants that neither it nor any of its officers, directors, shareholders or employees are, and shall not become, a person or entity with whom SVR is restricted from doing business with under regulations of the Office of Foreign Asset Control ("OFAC") of the Department of the Treasury (including, but not limited to, those named on OFAC's Specially Designated and Blocked Persons list) or under any statute, executive order (including, but not limited to, the September 24, 2001, Executive Order Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism), or other governmental action and is not and shall not engage in any dealings or transaction or be otherwise associated with such persons or entities.

6.   **Performance by Marketer.**

(a)   **Management of Radio Stations**   During the Term, Marketer shall, at its sole cost and expense be responsible for the marketing, operation, licensing and management of the Radio Stations. Marketer shall use Marketer's best efforts to create, program, provide, and broadcast content on the Radio Stations that will drive consumer traffic to the Welcome Centers in order to generate Qualified Prospects for SVR.  Marketer shall be responsible for reimbursing SVR for all actual costs and expenses of marketing, licensing, managing, and operating the Radio Stations, including, but not limited to all billboard rental costs (see **Exhibit B**, a copy of which is attached hereto and incorporated herein for a complete list of all approved billboards, regulatory and broadcast licensing and attorney fees, tower lease payments, engineering costs, repair costs, and all other operating costs and expenses related thereto (collectively, the "Radio Station Expenses"). Marketer shall at all times ensure that the Radio Stations and all programing broadcasted therefrom is in compliance with all applicable governmental laws, rules, and regulations, and shall be solely responsible for all Federal Trade Com.  Marketer shall be responsible for marketing the Radio Stations to local area merchants and selling advertising space on the Radio Stations.  Marketer shall be responsible for the cost and expense of all promotional items advertised on the Radio Stations to be given to Consumer Prospects for the purpose of driving consumer traffic to the Welcome Centers (e.g. Milton Crabapple CDs, duck calls, etc.).  Marketer shall not allow any advertisements on the Radio Stations from any business engaged in, directly or indirectly, adult entertainment or adult merchandise business, or to any business, directly, or indirectly, in competition with SVR, including but not limited to any vacation club, travel club, vacation or travel company, real estate company, rental company, or timeshare company.

(b)   **Welcome Center Expense Reimbursement.** Marketer shall reimburse SVR for all operational expenses of the Welcome Centers. For purposes of this Agreement, Operational Expenses (as hereinafter defined) of the Welcome Centers shall include, but not be limited to, the cost of utilities, trash removal, taxes, electricity, telephone, internet, snow removal and normal repairs and maintenance, and all other operating expenses; provided, however that Operational Expenses shall not include SVR's staffing costs at the Welcome Centers or SVR's rental and/or mortgage payment obligations with respect to the Welcome Centers. Marketer, at its sole cost and expense, shall install a full camera system with both audio and video in key locations in the Welcome Centers, and will give SVR 24/7 access to the camera system so that SVR can monitor business operations at the Welcome Centers. Marketer, at its sole costs and expense, shall hire someone to perform and record traffic counts at the Welcome Centers on a routine basis using info pulled from the camera system, and shall provide such information to SVR at no charge.

(c)   Marketer shall perform its duties hereunder in compliance with all applicable federal, state and local government laws, rules and regulations.

(d)   Marketer agrees and understands that SVR has the right to review and approve or disapprove in whole or in part all advertising copy used on the Radio Stations and all merchandise sold at the Welcome Centers prior to use, the approval of which shall not be unreasonably withheld, conditioned, or delayed.

(e)   Marketer shall defend, indemnify and hold SVR and its respective officers, directors,

2

Initials

shareholders and employees harmless from all damages, losses, causes of action, costs and expenses, including reasonable attorneys' fees, whether incurred as a result of investigation, defense or prosecution of any claim or cause of action, or any other loss resulting from a breach by Marketer of the terms of this Agreement, or a breach of any of its representations, warranties or obligations under this Agreement or from any and all misrepresentations or allegations of deceptive trade practices against Marketer or any of its officers, directors, employees, or agents in its activities hereunder, or in connection with any violation of intellectual property rights with respect to any merchandise offered for sale at the Welcome Centers or advertised on the Radio Stations. Such indemnification shall specifically include, but not be limited to, any liability incurred by SVR as a result of any misrepresentation by Marketer, its employees, agents and/or representatives, to prospects or members of the general public in connection with this Agreement.

(f)     Marketer may not use SVR'S name, trademark, trade name, or trade logo in any manner and in any media whatsoever, including, but not limited to, written or oral advertising materials and scripts, unless the same are approved in advance, in writing, by SVR. Marketer shall not use the name, trademark, trade name or trade logo of any Premium distributor without the prior written approval of SVR and such premium distributor.

(g)     Marketer may not represent itself to be or hold itself out as SVR to the public, or to any business, consumer, or federal, state or local governmental agency.

(i)     Marketer shall promptly forward to SVR copies of any complaints, letters, demands or other form of communication received from any governmental authority with respect to the operation of the Radio Stations, or from any consumer solicited by Marketer, or from any other governmental agency in regard to the activities contemplated hereunder. Marketer shall cooperate with SVR in the preparation of a response to such complaints. Marketer shall be liable for any representations that are not specifically, in writing, authorized by SVR, resulting in a complaint.

(j)     Marketer shall devote its best efforts, skill and diligence to the conduct of the business contemplated hereunder and shall not provide access to the names or identifiable information of any Consumer Prospects or Qualified Prospects it obtains hereunder to any third parties. This provision shall survive the expiration or earlier termination of this Agreement.

7.     **Restrictions.**

(a)     For the purpose of this Agreement, the term "SVR Confidential Information" shall include, without limitation, all of the following materials and information, whether or not patentable or subject to protection by a copyright: (i) names and other information pertaining to Consumer Prospects, Qualified Prospects, and, if applicable, Qualified Purchasers; (ii) marketing philosophy, objectives, strategies and information; (iii) competitive advantages and disadvantages; (iv) cost, pricing, and other financial data, information, objectives and strategies; (v) information concerning customers, vendors and other business partners; (vi) market position and objectives; (vii) business methods; (viii) trade secrets and any other information that derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, the public; and (ix) any and all improvements to any of the above. The terms of this Agreement shall also be considered SVR Confidential Information. Marketer agrees to maintain the confidentiality of the SVR Confidential Information and agrees to not to reveal, report, publish, disclose, give, sell, or transfer, directly or indirectly, any of the SVR Confidential Information for any purpose, nor to use any of the SVR Confidential Information for any purpose other than as expressly required by the terms and conditions of this Agreement. Marketer acknowledges and agrees that due to the unique nature of SVR Confidential Information, there can be no adequate remedy at law for any breach of its obligations hereunder, that any such breach may allow Marketer or third parties to unfairly compete with SVR resulting in irreparable harm to SVR, and therefore, that upon any such breach or any threat thereof, SVR shall be entitled to appropriate equitable relief in addition to whatever remedies it might have at law and to be indemnified by the Marketer from any loss or expense, including, without limitation, attorneys' fees, in connection with any breach or enforcement of Marketer's obligations hereunder or the unauthorized use or release of any such Confidential Information. Marketer shall notify the SVR in writing immediately upon the occurrence of any such unauthorized release or other breach. Notwithstanding anything to the contrary, the confidentiality provisions set forth in this Paragraph 7(a) shall survive the expiration or any termination of this Agreement.

(b)     Marketer expressly understands and agrees that the names and other information pertaining to Consumer Prospects and Qualified Prospects generated by Marketer pursuant to this Agreement are the exclusive property of SVR. Marketer shall not (1) use, sell or otherwise transfer the names and identifiable information of any Consumer Prospects and/or Qualified Prospects, for any purpose other than as expressly provided for herein; or (2) solicit or attempt to solicit Consumer Prospects and/or Qualified Prospects for the purchase of any goods or services other than

3

Initials

as expressly provided for herein, without entering into a separate agreement providing for appropriate compensation to SVR for the purchase of such names.

(c)     Marketer shall not permit any disparagement of or negative reference to SVR on the Radio Stations, in the Welcome Centers, or otherwise in any media whatsoever, including the internet    Marketer represents, warrants and covenants to SVR that. (i) In the event that it develops websites to advertise the Radio Stations and/or Welcome Centers, then all content of the website, including all text, graphics, images, sound, code and other elements therein, shall be free and clear of any claims or encumbrances including all intellectual property rights under copyright, patent, trademark, trade secret, and other applicable law; (ii) neither the web site, nor any portion, program, or functionality thereof, infringes or otherwise violates any copyright, patent, trademark, trade secret or other intellectual property right of any third party; (iii) that the web site is not obscene or libelous, and does not violate any right of privacy or right of publicity of any third party; (iv) that the web site does not contain, or have any link to a web site that contains, nudity, pornography, X-rated material or drug related paraphernalia; and (v) as of the date of this Agreement Marketer has not received notice of any claim from a third party that the web site, or any portion thereof, infringes any intellectual property right of any third party.  All links from the web site must be pre-approved in writing by SVR. Marketer will not cause or permit the display of any Promotional Material relating to SVR on any web site other than the Web Site.  Marketer will not establish any links to SVR's web site without an express written agreement setting forth the terms and conditions concerning same.   Marketer shall not send any unsolicited e-mails or faxes to Consumer Prospects.

8.     **Performance by SVR.**   SVR shall staff the Welcome Centers during SVR's normal business hours with an appropriate number (as determined by SVR) of OPC marketing agents for the purposes of booking Consumer Prospects to attend an SVR Sales Presentations.  SVR makes no representation or warranties as to the number of Qualified Prospects it shall generate from the Welcome Centers.

9.     **Compensation.**

(a)     **Radio Station Advertising Revenue.**   In the absence of any breach of this Agreement by Marketer, Marketer shall be entitled to keep all advertising revenue that Marketer generates from the Radio Stations. Marketer shall be solely responsible for payment of all applicable taxes in connection with such advertising revenue.

(b)     **Qualified Prospect Marketing Fee.**   In the absence of any breach of this Agreement by Marketer, SVR shall pay to Marketer as its total compensation for the exclusive marketing rights to Consumer Prospects and Qualified Prospects generated by SVR at the Welcome Center a Marketing Fee of $165.00 (the "**Marketing Fee**") for each Qualified Prospect that SVR generates from the Welcome Centers.  Marketer shall not be entitled to any Marketing Fee for any Consumer Prospects that are sold by SVR to any third parties.  SVR shall have the automatic right to "set-off" any Marketing Fees due to Marketer by any outstanding reimbursement of costs or expenses with regards to the Welcome Centers and Radio Stations due to SVR from Marketer without notice or presentment to Marketer.

(c)     SVR shall provide Marketer with daily reports (Monday through Friday only) of all Qualified Prospects booked by SVR at the Welcome Centers, and weekly reports of all Qualified Prospects booked by SVR at the Welcome Centers

(d)     SVR shall, during its normal course of business, provide Marketer with reconciliation statements for the previous week Monday through Sunday ("Pay Period") describing (i) all Qualified Prospects who toured, (ii) all Non-Qualified Prospects (as hereinafter defined), (iii) charge-backs, and (vii) Net Marketing Fee due Marketer, and SVR shall pay Marketer the Marketing Fee for such previous week's confirmed Qualified Prospects in accordance with SVR's standard accounts payable procedures.  SVR shall provide Marketer with monthly invoices for all expenses incurred by SVR related to the Radio Stations and with respect to the Operating Expenses of the Welcome Centers, all of which expenses shall be deducted from the next Marketing Fee(s) paid to Marketer. Marketer shall review all invoices promptly upon receipt and notify SVR of any discrepancies or issues relating thereto.  Upon receipt of such notification, the Parties shall in good faith meet in order to resolve the issue or discrepancy.  In the event of any expiration or earlier termination of this Agreement, Marketer agrees to immediately reimburse SVR for all outstanding expenses related to the Radio Stations and all outstanding Operating Expenses related to the Welcome Centers. The reimbursement obligations of this Section 9(e) shall expressly survive the expiration or earlier termination of this Agreement.

(e)     Notwithstanding anything contained herein to the contrary, for all Consumer Prospects that fail to show up for the Sales Presentation at their scheduled time, or that are not Qualified Prospects ("Non-Qualified Prospects"), SVR shall not pay Marketer any Marketing Fee.

(f)     Any  Premiums provided to Qualified Prospects upon completion of their presentation and tour shall  be provided  and paid for by SVR. Any accommodations to be occupied by a Qualified Prospect shall be provided

4

Initial

by SVR and SVR shall pay for all accommodations. It is understood and agreed that the Qualified Prospect shall pay for all associated taxes, telephone calls, meals and any other incidental charges associated with any accommodations provided.

(g)    Throughout the Term, SVR shall be entitled to market its Sales Sites through other independent or outside sales agents, telemarketing organizations, or direct mail organizations as it in its sole discretion determines, and Marketer may provide marketing services to others, including but not limited to travel providers and timeshare companies. Marketer acknowledges and agrees to honor the confidentiality and use restrictions contained in the Agreement at all times during the Term.

10.    **Agreement Not to Solicit Employees.**  The parties agree that during the term of this Agreement and for a period of two (2) years thereafter, neither party shall, either directly or indirectly, on its own behalf or on behalf of another, solicit, divert, or hire away, or attempt to solicit, divert or hire away, to its own business or any other business in competition with the other, any person retained by the other as a full-time employee, as a part-time employee, or as an independent contractor, without the mutual prior express written consent of both parties.

11.    **Independent Contractor Relationship.**  It is specifically agreed that the relationship of the parties hereto shall be that of a principal and independent contractor and not that of an employer and employee or principal and agent or partners. The parties agree that SVR shall not have the right to control Marketer or its employees, and that Marketer shall have full power and authority to select the means, manner, and method of performing the work and accomplishing the objectives of this Agreement without detailed direction or control by SVR. The parties hereto recognize and agree that no joint venture or partnership arrangement or agreement is intended or created hereby. No agent, employee or servant of either party shall be or shall be deemed to be the employee, agent or servant of the other, and each party shall be solely and entirely responsible for its acts and for the acts of its own agents, employees, servants and subcontractors during the performance of this Agreement. Each party shall be solely responsible for the compensation of its own agents, employees, servants and subcontractors. Neither party shall act on behalf of the other, nor shall either party represent itself directly or by implication as having authority to act on behalf of the other party, nor shall either party have the authority to create any obligation for or on behalf of or in the name of the other party, except as specifically set forth herein.

12.    **Tax and Workers' Compensation Liability.**  SVR and Marketer acknowledge and agree that their relationship is that of principal and independent contractor and that, accordingly, SVR agrees to file or cause to be filed, in a timely manner, all required tax forms reporting the compensation and other consideration hereunder paid to or earned by Marketer. SVR will not withhold any taxes from any amount paid to Marketer, nor will SVR pay unemployment compensation or provide workers' compensation insurance to Marketer or to Marketer's agents or employees. Marketer agrees to file all required tax forms as to its own agents or employees and to withhold and forward to the appropriate authorities any applicable social security and federal and state income taxes and to provide evidence of worker's compensation coverage upon demand by SVR. Marketer shall be solely responsible for all taxes of every kind and nature with respect to Marketer's business activities and SVR shall have no responsibilities with respect to the same.

13.    **Termination.**  Either party shall have the right to immediately terminate this Agreement on notice upon the happening of an "Event of Default," defined as follows:

(a)    The failure to comply with any term or provision of this Agreement or any exhibit hereto; or

(b)    The filing of a voluntary petition in bankruptcy by either party or the adjudication of either party as bankrupt or insolvent, or the execution by Marketer of an assignment for the benefit of creditors of compensation to be paid by SVR hereunder, or the appointment of a receiver for either party; or

(c)    The violation by either party of any federal, state, county or city law, ordinance or code in the performance of this Agreement.

(d)    Notwithstanding anything herein contained to the contrary, SVR shall have the right to immediately terminate this Agreement in the event that Marketer is in default under any other agreement that it has entered into with SVR, or any affiliate of SVR.

In the absence of any default, either party is free to terminate this Agreement upon thirty (30) days' advance written notice to the other party.

In the event of the expiration or any termination of this Agreement, Marketer shall (i) surrender all of its rights and privileges granted hereunder and shall thereafter refrain from exercising any such rights and privileges including, without limitation, the authority to generate Consumer Prospects for the benefit of SVR; (ii) immediately return to SVR

5

Initials _____

all advertising materials, promotional materials, signs, scripts, contract forms, and other documents which are the property of SVR or contain the name of SVR, or SVR's premium distributors, or which SVR has made available to Marketer for the purpose of contacting Consumer Prospects, (iii) immediately pay any and all outstanding monies owed to SVR, (iv) immediately provide SVR with copies of all licensing and other documentation with respect to the operation of the Radio Stations, and (v) immediately remove SVR's name, trademarks, trade names, trade logos from all marketing materials, signs, web sites and all other documents

**14.    Default/Remedies.** In the event of a breach of this Agreement or default of the obligations hereunder by either party, then each party shall be entitled to all applicable rights and remedies as may be available under law or in equity, including the right to file an action seeking damages, or, in the event that damages are inadequate to remedy the breach, the non-defaulting party is entitled to file an action for equitable relief, including specific performance, injunctive relief, or a declaratory judgment, with the prevailing party entitled to recover its reasonable attorneys' fees and the costs of the action. However, the parties acknowledge and agree that any breach by Marketer of Section 8(c) of this Agreement shall result in loss and/or damage to SVR, the amount of which is extremely difficult to ascertain and determine, and that for each individual Lead used, sold, and/or otherwise transferred in contravention of this Agreement, Marketer shall pay liquidated damages to SVR in the amount of $225.00 per each Lead used and/or transferred. For purposes of this Section, "Lead" shall mean and be defined to include any information, including but not limited to name, address, and telephone number, pertaining to a Consumer Prospect, Qualified Prospect, and/or Information otherwise contained in a Lead List provided by SVR. The parties agree that this amount is a reasonable estimate of the actual loss and/or damage to SVR that will accrue as a result of a breach of Section 8(c) by Marketer, and that this amount is not so excessive that it would be a penalty. The foregoing shall not limit SVR's right to choose any and all remedies it deems appropriate, including, but not limited to, actual damages and costs from Marketer in the event of a breach of Section 8(c) or any other provision of this Agreement.

**15.    Notices.** Any notice, request, demand or other communication required or permitted hereunder shall be given by facsimile, certified mail, return receipt requested, or via overnight delivery. If to SVR, the notice shall be addressed to:  Surrey Vacation Resorts, Inc., Office of the General Counsel, 430-C State Highway 165 South, Branson, MO 65616.  If to Marketer, the notice shall be addressed to the address of Marketer set forth in the introductory paragraph of this Agreement. Notice shall be deemed given three (3) days after being mailed or, in the case of facsimile or overnight delivery, upon delivery.

**16.    Assignment.** This Agreement shall be binding upon the parties and their respective successors and assigns; provided, however, Marketer understands and agrees that (1) SVR shall have the power and right to assign any right or interest in this Agreement without the prior written consent of Marketer and (2) Marketer shall not have the power or right to assign any right or interest in this Agreement without the prior written consent of SVR, which consent may be withheld in SVR'S sole discretion.

**17.    Applicable Law.**  This Agreement shall be governed by and construed according to the laws of the State of Missouri. Any action to enforce this Agreement shall be exclusively determined by a court located in the State of Missouri, County of Taney, which shall be deemed the exclusive proper venue for all purposes.

**18.    Entire Agreement.** This Agreement constitutes the entire agreement between the parties with respect to the subject matter herein contained. Any agreements, promises, negotiations, representations or other terms not set forth or referred to in this Agreement or in any Exhibit hereto are of no force and effect.

**19.    Modification.** This Agreement may not be modified or amended except in writing signed by both parties. The parties agree to fully cooperate in negotiating any changes or modifications to this Agreement as may be necessary to fully comply with any statute or code as may be applicable to matters herein contemplated.

**20.    Interpretation.** Should a provision of this Agreement require judicial interpretation, it is agreed that the judicial body interpreting or construing the same shall not apply the assumption that the terms of this Agreement shall be more strictly construed against the party which itself or through its agents drafted the Agreement, it being agreed that the agents of all parties have participated or had the opportunity to participate equally in the preparation of this Agreement.

**21.    Miscellaneous.** If any part of this Agreement shall be deemed invalid under applicable law, the remaining parts of this Agreement shall be in full force and effect as though any unenforceable part or parts were not written into this Agreement. In construing this Agreement, the singular tense shall be deemed to include the plural and the male or neuter gender shall mean all genders, whenever such meaning or interpretation is necessary and appropriate. Headings contained in this Agreement are for reference purposes only, and shall not affect in any way the meaning or interpretation of this Agreement. Subject to Paragraph 16 hereof, this Agreement shall be binding upon the parties hereto, their legal representatives, successors and assigns, and the parties hereto do hereby covenant and

6

Initials _____

agree that they, their legal representatives, successors and assigns will execute any and all papers and documents that may be required in accordance with this Agreement.  A facsimile or electronically transmitted signature on this Agreement shall be deemed an original signature and binding on the parties. This Agreement may be executed in multiple counterparts, each of which will constitute an original and all of which will constitute one (1) Agreement.

IN WITNESS WHEREOF the Parties have executed this Agreement as of the date first written above.

| SVR: | MARKETER: |
|---|---|
| **SURREY VACATION RESORTS, INC.** | **KENT DIRECT, INC** |
| Sign: | Sign: |
| Print:  Alex Hodges | Print:  Kent Emmons |
| Title:  C.O.O | Title: President |

7

Initials

## Exhibit "A"

### Tour Qualifications:

- Married or cohabiting couples with proof of same address.
- Vacationers must be over 25 years of age.
- Combined annual household income for married or cohabiting couples must be at least $50,000 per year.
- Must not have toured any GCR or related property within the last thirteen (13) months.
- No groups allowed. A group is considered two or more families traveling together or meeting at the same time using a GCR vacation or other vacation certificate, regardless of where the certificate was obtained.
- Clients must attend a minimum 90-120 minute vacation ownership presentation and tour. If married or cohabiting, both spouses must attend.
- Clients must present valid government issued photo ID and a major credit card for identification at time of check in. Debit cards will not be accepted.

Initials _____

## EXHIBIT B

**Tennessee Billboards:**

Elevation:
 $675

Premier:
$475
$475
$475
$475

JDM:
$500
$775
$350

TOTAL TENNESSEE:   $4,200 per month

**Missouri Billboards:**

Missouri Neon:
$330
$350
$355
$275
$200
$200
$385
$285
$350
$250

Waitt:
$230
$250
$250
$250
$250
$255

TOTAL MISSOURI BOARDS:  $4,465

TOTAL BILLBOARDS:  $8,665

*Exhibit Not
approved by Kent
he provided previous
page (Exhibit B)
double check,
make sure Billboard
contracts are the
correct ones.*

# EXHIBIT "B"

**Missouri Radio Billboards**

| Contract/Asset # | Contract Company | Location | Monthly Rent | Start Date | Renewal Date | Renew Yes | Renew No |
|---|---|---|---|---|---|---|---|
| **Hwy 60** | | | | | | | |
| 1693108 | Lamar Companies | s/s US 60E. 1mi E/O Farm Rd 209 | 500.00 | 3.21.11 | NA | Yes | |
| **Joplin to Spg I-44** | | | | | | | |
| 6478 | Waitt Outdoor | I-44 Eastbound @ MM 54.7 | 230.00 | 03.06.13 | 03.06.13 | Yes | |
| 6490 | Waitt Outdoor | I-44 Eastbound @ MM 40.2 | 250.00 | 02.15.13 | 02.15.14 | Yes | |
| 6493 | Waitt Outdoor | I-44 Eastbound @ MM 59.2 | 250.00 | 03.06.13 | 03.06.13 | Yes | |
| **Leb to Spg I-44** | | | | | | | |
| 6491 | Waitt Outdoor | I-44 Westbound @ MM 117.8 | 250.00 | 03.05.12 | 03.05.14 | Yes | |
| 6492 | Waitt Outdoor | I-44 Westbound @ MM 109.3 | 250.00 | 02.15.13 | 02.15.14 | Yes | |
| 6475 | Waitt Outdoor | I-44 Westbound @ MM 99 | 255.00 | 02.15.13 | 02.15.14 | Yes | |
| 1464992 | Lamar Companies | S/S I-44 mi E of US65 | 525.00 | 03.21.10 | mth-to-mth | Yes | NO |
| *Monthly Totals* | | | 2,510.00 | | | | |

**Tennessee Radio Billboards**

| Contract/Asset # | Contract Company | Location | Monthly Rent | Start Date | Renewal Date | Renew Yes | Renew No |
|---|---|---|---|---|---|---|---|
| **I-40** | | | | | | | |
| | Elevation Outdoor Adv. | I-40 @ MM 432 | 675.00 | 09.02.09 | NA | Yes | |
| | Premier Media | I-40 Westbound MM 423 | 475.00 | 06.15.10 | NA | Yes | |
| | Premier Media | I-40 MM 424 | 475.00 | 01.15.13 | 07.15.13 | Yes | |
| | JDM Outdoor Lease | I-40 Westbound @ MM 430 | 500.00 | 04.01.12 | 03.31.14 | Yes | |
| | JDM Outdoor Lease | I-40 Eastbound @ MM 395.8 | 775.00 | 07.01.13 | 06.30.14 | | No |
| | JDM Outdoor Lease | I-40 Eastbound @ MM 404 | 800.00 | 04.01.12 | 03.31.14 | | No |
| | JDM Outdoor Lease | I-40 Eastbound @ MM 403 | 900.00 | 04.01.13 | 03.31.14 | | No |
| | Lamar | I-40 MM 418 | 1,017.60 | 06.04.12 | 06.02.13 | Yes | |
| **I-81** | | | | | | | |
| | Premier Media | I-81 MM 4 | 475.00 | 06.15.10 | 06.15.13 | Yes | |
| | Premier Media | I-81 MM 8 | 475.00 | 06.15.10 | 06.15.13 | Yes | |
| | Premier Media | I-81 MM 6 | 475.00 | 06.15.10 | 06.15.13 | Yes | |
| | JDM Outdoor Lease | I-81 MM 16 | 350.00 | 07.17.10 | NA | | No |
| *Monthly Totals* | | | 7,392.60 | | | | |

| *Monthly Total* | | | 9,902.60 | | | | |

Initials 

# JASON SHROFF AND ALEX HODGES



Alex Hodges, COO Surry/Capital Resorts

## Jason Shroff's Capital Resorts headed for Bankruptcy

*Filing details available Tuesday August 17*

*A group of creditors have come together to file an involuntary bankruptcy case pushing Surrey Vacation Resorts, Inc. (operating as Grand Crowne Resorts) and Capital Resorts Group into Chapter 7 bankruptcy. The timeshare resort grouping, lead by reportedly recently disbarred attorney Jason Shroff from Myrtle Beach, SC and former BlueGreen executive Alex Hodges of Branson, MO, has apparently been in deep financial trouble for some time.  Speculation is that assets including real estate, cash and receivables were fraudulently transferred from one entity to another to avoid paying creditors.*

*Unnamed creditors confirmed that they are cooperating with investigators who are looking into the possibility of criminal charges against several members of the executive team and their financiers.  Investigators confirmed that they are looking into charges against key executives that include fraudulent transfer, theft by deception among other accusations of wrongdoing.  Another creditor made an observation that "Up until this past year or two Surrey Vacations was a well run family business lead by the Perme family with a great track record of success" and that "it would appear now that the combined companies have been picked clean by Hodges and Shroff".*

*According to an insider, officers of the combined companies have been living a quite lavish personal lifestyle that includes private jet excursions, luxury cars and homes and a new 14,000 square foot office suite in the pricey Morgan Stanley tower in St. Petersburg, FL. According to public records, regulatory problems are nothing new to companies that both Shroff and Hodges have held leadership positions in.*

*If you or anyone you know feels as though they have been wronged by Capital Resorts Group or Surrey Vacation Resorts they are urged to call their local State General Attorney's Office or the Federal Trade Commission office in your area.*

*http://www.ripoffreport.com/r/Grand-Crowne-Capital-Resorts/nationwide/Grand-Crowne-Resorts-Surry-Vacation-Resorts-Capital-Resorts-Lies-Lies-Lies-Bait-a-1201369*

*http://www.judicial.state.sc.us/courtOrders/displayOrder.cfm?orderNo=2015-04-23-01Type your paragraph here.*
*http://www.ripoffreport.com/r/capital-resortsgrand-crown/st-petersburg-florida-33701/capital-resortsgrand-crown-the-rip-off-company-that-is-baiting-and-switching-is-capital-1206662*



EXHIBIT
F

# Welcome to jasonshroff.com

If you like taking it up the ███, this site is for you... However, if you have taken it up the ███ from a guy in the timeshare business named Jason Shroff, this is a totally different site and is not affiliated with him. Look, we get the irony in the connotation of "taking it up the ███" and "timeshare" but this is not that guy. Save that stuff for the AG and their receivable financiers... This site is for amusement only... :)
   In the meantime, always stay tuned here for new content daily, REALLY compelling links and 13 new related very searchable sites launching over the next week that will feature some of your favorite stars from the jasonshroff.com cast of characters ... The hits just keep on coming..! Corporate gossip and who's doing who while they are traveling and who's wife is going absolutely CRAZY to find out. We love that stuff here... And of course    Nightlife !



# Myrtle Beaches HOTTEST gay bars....

# .....And jasonshroff.com's Movie Picks below

# http://www.redtube.com/redtube/gay

Type your paragraph here.

http://www.judicial.state.sc.us/courtOrders/displayOrder.cfm?orderNo=2015-04-23-01Type your paragraph here.

# Welcome to jasonshroff.com

If you like taking it up the ●●, this site is for you... However, if you have taken it up the ●● from a guy in the timeshare business named Jason Shroff, this is a totally different site and is not affiliated with him. Look, we get the irony in the connotation of taking it up the ●● and 'timeshare' but this is not that guy. Save that stuff for the AG and their receivable financiers... This site is for amusement only... :)  In the meantime, always stay tuned here for new content daily, REALLY compelling links and 13 new related very searchable sites launching over the next week that will feature some of your favorite stars from the jasonshroff.com cast of characters ... The hits just keep on coming..!  Corporate gossip and who's doing who while they are traveling and whos wife is going absolutely CRAZY to find out. We love that stuff here... And of course... Nightlife.!

## Well... It's official..  The jasonshroff.com show has been picked up on YouTube and Vimeo and several episodes are going into production as early as t●



TRATEGY &
SUCCESS

WOW-WEE..! It's been a busy weekend in the writer's room.  Seeing this event coming several months out, the producers starting stuffing their files with lots of facts that would give the series absolute street cred and, given that most of the writers of the upcoming episodes are attorneys in 4 different states, you can imagine the number of storylines they had to choose from.  This season of jasonshroff.com is guaranteed to be filled with all of the drama and suspense of greed, lust, deceit, mystery, sex and the twists and unexpected turns that you would hope for out of a soapie like this.  And, rest assured, it will feature plenty of lighter moments typically involving drinking, sex, coke, pot and, of course - LOTS OF STRIPPERS.!  Woo-Hoo..!   As the series unfolds, things will be revealed about each of the characters that you DID NOT see coming.!  Any idea who's taking a walk on the other side.?  Here's a little hint:  He's had more backdoor deliveries than Best Buy.  Hmmmmmm...  Stay tuned....  In the meantime, here are some Episode titles that we are playing with...

"I ACTUALLY TOOK THAT SELFIE AND SENT IT TO HER?  MY WIFE IS GOING TO ●●●..!"

"HOW TO TURN A SIMPLE $100,000 RECEIVABLE INTO A MULTI-MILLION DOLLAR BANKRUPCY AND PUBLIC RELATIONS NIGHTMARE"

"IF THOSE GIRLS AT THE ●●● BARS COULD TALK   OH   THEY CAN?"

"WHAT?  I THOUGH IF MY WIFE WAS PREGNANT HOOKERS WERE OK...  OUCH?"

"MY GOD   THEY HAVE OUR DATABASE   WITH CONTACT INFO?  HOLY COW!"

"SO I SHOULDN'T TAKE KICKBACKS AND BACKDOOR DEALS FROM VENDORS?"

"THIS COULD HAVE BEEN SO MUCH EASIER - WTF WAS I THINKING?"

"FUN WITH FINANCIAL STATEMENTS AND EVEN FUNNIER ACCOUNTING.  WHOOPS..!"  (also considering "SORRY CAPITAL ONE  AND YOU OTHER IDIOTS DUMB ENOUGH TO CONSIDER FINANCING US".)

"HOW TO TELL MY DADDY AND UNCLE I QUIT THIS MESS?"

"SO YOU'RE SAYING IT'S NOT OK TO ●●● A MARRIED EMPLOYEE?  WELL DOG GONE   WHO KNEW?"

More fun just around the corner so stay tuned.!  :)

# Welcome to jasonshroff.com

Quote of the day:

## "So let me get this straight...  You actually have to be registered in those states when you sell at those cheesy dinner pitches.?"

Appropriate response is:

a)    But Judge, I'm pretty sure one of our hollowed out companies was registered there at one time

b)    Really?  I had no idea.

c)    OMG.!  My Daddy and Uncle are going to scold me.

**STRATEGY & SUCCESS**

d)    Oh hell, just send me to prison.  I could use the action.

## OH...  Such an action packed few weeks ahead.  So many regulators and so little time...    :)

Coming soon....

FCC regulations you had no idea even existed

and

Copyright infringement..  WOW.!  More expensive than I thought.!

http://www.judicial.state.sc.us/courtOrders/displayOrder.cfm?orderNo=2015-04-23-01Type your paragraph here.

**15AF-CC00710**

Electronically Filed - Taney - August 19, 2015 - 11:24 AM

IN THE CIRCUIT COURT OF TANEY COUNTY, MISSOURI

SURREY VACATION RESORTS, INC.,        )
d/b/a GRAND CROWNE RESORTS,           )
                                      )
            Plaintiff,                )
                                      )
vs.                                   )        Case No. _____
                                      )
KENT EMMONS,                          )
                                      )
            Defendant.                )

### PETITION FOR INJUNCTIVE RELIEF AND DAMAGES

COMES NOW Surrey Vacation Resorts, Inc., by and through its attorneys undersigned, and for its Petition against Defendant Thomas Barlow, hereby states and avers to the Court as follows:

### GENERAL ALLEGATIONS

1.      Plaintiff is a corporation duly organized and existing under and by virtue of the law of the State of Missouri, with its principal place of business in Branson, Missouri.

2.      Upon information and belief, Defendant is an individual and citizen and resident of the state of California.

3.      Venue and jurisdiction are proper in Taney County, Missouri, because this Petition alleges one or more tort counts and Plaintiff was first injured in Taney County, Missouri. Further, the amount in controversy exceeds $25,000.00.

4.      Further, and pursuant to § 506.500.1, RSMo., Defendant is subject to personal jurisdiction in this state for the reasons that Defendant has engaged in the following acts: transacted business within this state, made a contract within this state, and committed a tortious act within this state.

5.      At all times relevant to the allegations herein, Plaintiff was a developer and

1


EXHIBIT
G

Electronically Filed - Taney - August 19, 2015 - 11:24 AM

manager of timeshare resort properties.

6.    At all times relevant to the allegations herein, and upon information and belief, Defendant, through his corporation Kent Direct, Inc., managed two AM radio stations (KLFJ located in Springfield, Missouri, and WSEV located in Sevierville, Tennessee), which Plaintiff owned since approximately January, 2006.

7.    In July, 2015, Capital Resorts Group, LLC ("CRG"), purchased a portion of the assets of Plaintiff and continues to have an ongoing business relationship with Plaintiff. CRG, however, did not purchase the two radio stations managed by Defendant as part of the deal with Plaintiff.

8.    Plaintiff terminated Defendant's management contract for the two radio stations on or about July 22, 2015.

9.    Upon information and belief, Defendant then attempted unsuccessfully to negotiate for the sale and/or transfer of ownership of the two radio stations from Plaintiff to his company, Kent Direct, Inc.

10.    Thereafter, Defendant engaged in a pattern of abusive and harassing behavior in an attempt to force a sale and/or transfer of ownership of the two radio stations from Plaintiff to his company, Kent Direct, Inc., including threatening to initiate involuntary bankruptcy proceedings against Surrey and CRG and levying numerous allegations of impropriety.

11.    Upon information and belief, Defendant registered and/or created a website with the domain name "jasonshroff.com" on or about August 12, 2015.

12.    Upon information and belief, Defendant owns, operates, creates, and manages the content at the domain name jasonshroff.com.

13.    Upon information and belief, Defendant has used the domain name

2

Electronically Filed - Taney - August 19, 2015 - 11:24 AM

jasonshroff.com as a platform to publish defamatory remarks and information regarding Plaintiff, CRG, Jason Shroff (a principal, member, and manager of CRG), and Justin Alex Hodges (Plaintiff's former and CRG's current COO) as a means to retaliate against Plaintiff for terminating Defendant's contract to manage the two radio stations and to extort Plaintiff into selling and/or transferring ownership of the radio stations to Defendant's company.

14.    Upon information and belief, Defendant has used the domain name jasonshroff.com as a platform to unlawfully use Plaintiff's mark to deceive others into believing the material on said domain name was published by Plaintiff, or a person or entity affiliated with Plaintiff.

15.    At all times relevant to the allegations herein, Defendant knew or should have known that Plaintiff is a Missouri corporation with its principal place of business in Branson, Taney County, Missouri.

16.    At all times relevant to the allegations herein, Defendant knew or should have known that publication of defamatory remarks and information regarding Plaintiff via the domain name jasonshroff.com would reach a world-wide audience via the internet including within Taney County, Missouri.

17.    At all times relevant herein, Defendant intentionally directed the publication of defamatory remarks and information regarding Plaintiff to Taney County, Missouri, in attempts to cause detrimental effects to Plaintiff's reputation within the Taney County, Missouri, community.

## COUNT I
### TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND PERMANENT INJUNCTION

COMES NOW Plaintiff, by and through counsel of record, and for Count I of its cause of

3

Electronically Filed - Taney - August 19, 2015 - 11:24 AM

action against Defendant hereby pleads and avers as follows:

18.    Plaintiff incorporates Paragraphs 1-17 of its Petition as though these paragraphs were set forth fully herein.

19.    The acts of Defendant, as described herein, if not permanently restrained, would constitute immediate legal wrong against Plaintiff.

20.    The acts of Defendant, as described herein, would result in irreparable injury to Plaintiff, for which an adequate remedy could not be afforded by an action for damages.

21.    Absent the injunctive relief prayed for herein, Defendant will likely continue his malfeasance and permanently injure Plaintiff's business good will, reputation, and business relationships.

22.    Plaintiff is ready, willing and able to execute, or cause some responsible party to execute for it, a bond with sufficient surety or sureties to Defendant, in such sum as this Court shall deem sufficient to secure the amount of any damages that may be occasioned by the issuance of a Temporary Restraining Order as requested by Plaintiff against Defendant, which bond is to be conditioned that Plaintiff will abide by the ultimate decision which shall be made in this action, and pay all sums of money, damages, and costs that shall be adjudicated against Plaintiff, if any, if such Temporary Restraining Order shall be dissolved; in lieu thereof, Plaintiff is ready, willing and able to deposit with this Court such sum, in cash, as this Court may require, sufficient to secure such amounts.

WHEREFORE, in this Count I of this Petition, Plaintiff prays this Court enter the following:

A.    A mandatory and prohibitive Temporary Restraining Order, pending judicial resolution of the matter asserted herein by Plaintiff, for a period of ten (10) days, or until a

Electronically Filed - Taney - August 19, 2015 - 11:24 AM

preliminary injunction hearing on this matter can be held, (1) enjoining Defendant, or anyone acting by or through Defendant, from (a) maintaining or continuing to use the domain name jasonshroff.com for any purpose whatsoever; (b) using Plaintiff's business name (Surrey Vacation Resorts, Inc. or Grand Crowne Resorts) or mark, or a colorable imitation thereof, in any published format, including email, print, or online media/websites; and (c) publishing any statements about Plaintiff's business practices, including any of Plaintiff's affiliates or subsidiaries; and (2) ordering Defendant, and anyone acting by or through Defendant, to immediately and permanently delete all and related content on the domain name jasonshroff.com;

B.      An order directing Defendant to appear before the Court at such time and place as the Court may direct, to show cause why an injunction should not issue against him, and thereafter enter a mandatory and prohibitive Preliminary Injunction (1) enjoining Defendant, or anyone acting by or through Defendant, from (a) maintaining or continuing to use the domain name jasonshroff.com for any purpose whatsoever; (b) using Plaintiff's business name (Surrey Vacation Resorts, Inc. or Grand Crowne Resorts) or mark, or a colorable imitation thereof, in any published format, including email, print, or online media/websites; and (c) publishing any statements about Plaintiff's business practices, including any of Plaintiff's affiliates or subsidiaries; and (2) ordering Defendant, and anyone acting by or through Defendant, to immediately and permanently delete all and related content on the domain name jasonshroff.com;

C.      A mandatory and prohibitive order permanently (1) enjoining and restraining Defendant, or anyone acting by or through Defendant from (a) maintaining or continuing to use the domain name jasonshroff.com for any purpose whatsoever; (b) using Plaintiff's business

Electronically Filed - Taney - August 19, 2015 - 11:24 AM

name (Surrey Vacation Resorts, Inc. or Grand Crowne Resorts) or mark, or a colorable imitation thereof, in any published format, including email, print, or online media/websites; and (c) publishing any statements about Plaintiff's business practices, including any of Plaintiff's affiliates or subsidiaries; and (2) ordering Defendant, and anyone acting by or through Defendant, to immediately and permanently delete all and related content on the domain name jasonshroff.com; and

     D.     Any other order that the Court deems just and proper under the premises.

## COUNT II
## DEFAMATION

COMES NOW Plaintiff, by and through counsel of record, and for Count II of its cause of action against Defendant hereby pleads and avers as follows:

     23.     Plaintiff incorporates Paragraphs 1-22 of its Petition as though these paragraphs were set forth fully herein.

     24.     Upon information and belief, Defendant, through his website at domain name jasonshroff.com, published statements and allegations tending to impeach the honesty, integrity, virtue, and/or reputation of Plaintiff, thereby exposing Plaintiff to public hatred, contempt, ridicule, and/or obloquy and/or causing Plaintiff to be shunned or avoided, or to injure Plaintiff in its office, business, or occupation (hereinafter the "Statements").

     25.     The Statements have a defamatory meaning.

     26.     Upon information and belief, Defendant published the Statements with actual malice as a means to retaliate against Plaintiff for terminating Defendant's contract to manage the two radio stations and to extort Plaintiff into selling and/or transferring ownership of the radio stations to Defendant's company.

     27.     Additionally, many of the Statements constitute defamation *per se* in that they are

Electronically Filed - Taney - August 19, 2015 - 11:24 AM

false accusations of dishonesty, lack of integrity and untrustworthiness which directly impugn Plaintiff's professional reputation and, therefore, malice in their publication is implied.

28.    The Statements are false.

29.    The Statements concerned Plaintiff.

30.    Additionally, Plaintiff stands to suffer economic and material damages in the future due to the damage caused by the Statements published on jasonshroff.com.

31.    As a direct and proximate result of Defendant's false and defamatory statements described herein, and its publication thereof, Plaintiff was greatly injured in its reputation and credit, its business has suffered greatly from loss of customers who have heard of or seen the defamatory material, and it has been deprived of great gains and profits which it otherwise would have made, and has otherwise suffered loss and injury.

32.    Defendant's conduct herein was outrageous because of Defendant's evil motive or reckless indifference to the rights of others entitling Plaintiff to an award of punitive damages in a sum sufficient to punish Defendant and to deter others from like conduct.

WHEREFORE, in this Count II of this Petition, Plaintiff prays for judgment in favor of Plaintiff and against Defendant in an amount to be proven at trial that represents the fair and reasonable amount of damages sustained by Plaintiff, for punitive damages in an amount fair and reasonable to be determined by proof at trial, for court costs, and for such other and further relief as the Court may deem just and proper under the circumstances.

## COUNT III
### INJURIOUS FALSEHOOD

COMES NOW Plaintiff, by and through counsel of record, and for Count III of its cause of action against Defendant hereby pleads and avers as follows:

33.    Plaintiff incorporates Paragraphs 1-32 of its Petition as though these paragraphs

7

Electronically Filed - Taney - August 19, 2015 - 11:24 AM

were set forth fully herein.

34.     Upon information and belief, Defendant, through his website at domain name jasonshroff.com, published the Statements, which were false and intended to result in harm to the interests of Plaintiff, said interests having a pecuniary value to Plaintiff.

35.     At all times relevant to the allegations herein, Defendant knew, or should have known, that the Statements would harm Plaintiff's pecuniary interests.

36.     At all times relevant to the allegations herein, Defendant knew the Statements were false, or acted in reckless disregard of the truth or falsity of the Statements.

37.     As a direct and proximate result of Defendant's false and defamatory statements described herein, and its publication thereof, Plaintiff was greatly injured in its reputation and credit, its business has suffered greatly from loss of customers who have heard of or seen the defamatory material, and it has been deprived of great gains and profits which it otherwise would have made, and has otherwise suffered loss and injury.

38.     Defendant's conduct herein was outrageous because of Defendant's evil motive or reckless indifference to the rights of others entitling Plaintiff to an award of punitive damages in a sum sufficient to punish Defendant and to deter others from like conduct.

WHEREFORE, in this Count III of this Petition, Plaintiff prays for judgment in favor of Plaintiff and against Defendant in an amount to be proven at trial that represents the fair and reasonable amount of damages sustained by Plaintiff, for punitive damages in an amount fair and reasonable to be determined by proof at trial, for court costs, and for such other and further relief as the Court may deem just and proper under the circumstances.

8

Electronically Filed - Taney - August 19, 2015 - 11:24 AM

## AFFIDAVIT

STATE OF MISSOURI   )
                             ) ss.
COUNTY OF TANEY    )

David R. Cope, Authorized Agent and General Counsel for Surrey Vacation Resorts, Inc. d/b/a Grand Crowne Resorts, the Plaintiff herein, being duly sworn upon her/his oath states that he is over the age of 18, has personal knowledge of the facts set forth in the Petition, and that the facts therein are true and accurate to the best of his knowledge, information or belief.

SURREY VACATION RESORTS, INC.

By:   David R. Cope
Its:   General Counsel

Subscribed and sworn to before me this 19 day of August, 2015.

LORI HALTOM
Notary Public - Notary Seal
State of Missouri
Commissioned for Taney County
My Commission Expires: April 08, 2017
Commission Number: 13405272

Notary Public

NEALE & NEWMAN, L.L.P.

By: Daniel K. Wooten, #48061
     Britton D. Jobe, #62084

American National Center
1949 East Sunshine, Suite 1-130
Springfield, Missouri  65804
Telephone:   (417) 882-9090
Facsimile:   (417) 882-2529
Email:       dwooten@nnlaw.com
             bjobe@nnlaw.com

ATTORNEYS FOR PLAINTIFF

9

**15AF-CC00710**

Electronically Filed - Taney - August 19, 2015 - 11:24 AM

## IN THE CIRCUIT COURT OF TANEY COUNTY, MISSOURI

| | |
|---|---|
| SURREY VACATION RESORTS, INC., d/b/a GRAND CROWNE RESORTS, )<br>)<br>)<br>Plaintiff,   )<br>)<br>vs.   )<br>)<br>KENT EMMONS,   )<br>)<br>Defendant.   ) | Case No. _____ |

### APPLICATION FOR TEMPORARY RESTRAINING ORDER WITHOUT NOTICE

Plaintiff hereby requests that the Court enter a temporary restraining order, both mandatory and prohibitive, without notice to Defendant, restraining Defendant from performing various actions, and ordering Defendant to perform certain other actions. In support of this Motion, Plaintiff adopts and incorporates herein by this reference its verified Petition and further states that:

1.     Plaintiff is a corporation duly organized and existing under and by virtue of the law of the State of Missouri, with its principal place of business in Branson, Missouri.

2.     Upon information and belief, Defendant is an individual and citizen and resident of the state of California.

3.     Venue and jurisdiction are proper in Taney County, Missouri, because this Petition alleges one or more tort counts and Plaintiff was first injured in Taney County, Missouri. Further, the amount in controversy exceeds $25,000.00.

4.     Further, and pursuant to § 506.500.1, RSMo., Defendant is subject to personal jurisdiction in this state for the reasons that Defendant has engaged in the following acts: transacted business within this state, made a contract within this state, and committed a tortious act within this state.

Electronically Filed - Taney - August 19, 2015 - 11:24 AM

5.    At all times relevant to the allegations herein, Plaintiff was a developer and manager of timeshare resort properties.

6.    At all times relevant to the allegations herein, and upon information and belief, Defendant, through his corporation Kent Direct, Inc., managed two AM radio stations (KLFJ located in Springfield, Missouri, and WSEV located in Sevierville, Tennessee), which Plaintiff owned since approximately January, 2006.

7.    In July, 2015, Capital Resorts Group, LLC ("CRG"), purchased a portion of the assets of Plaintiff and continues to have an ongoing business relationship with Plaintiff. CRG, however, did not purchase the two radio stations managed by Defendant as part of the deal with Plaintiff.

8.    Plaintiff terminated Defendant's management contract for the two radio stations on or about July 22, 2015.

9.    Upon information and belief, Defendant then attempted unsuccessfully to negotiate for the sale and/or transfer of ownership of the two radio stations from Plaintiff to his company, Kent Direct, Inc.

10.    Thereafter, Defendant engaged in a pattern of abusive and harassing behavior in an attempt to force a sale and/or transfer of ownership of the two radio stations from Plaintiff to his company, Kent Direct, Inc., including threatening to initiate involuntary bankruptcy proceedings against Surrey and CRG and levying numerous allegations of impropriety.

11.    Upon information and belief, Defendant registered and/or created a website with the domain name "jasonshroff.com" on or about August 12, 2015.

12.    Upon information and belief, Defendant owns, operates, creates, and manages the content at the domain name jasonshroff.com.

2

Electronically Filed - Taney - August 19, 2015 - 11:24 AM

13.    Upon information and belief, Defendant has used the domain name jasonshroff.com as a platform to publish defamatory remarks and information regarding Plaintiff, CRG, Jason Shroff (a principal, member, and manager of CRG), and Justin Alex Hodges (Plaintiff's former and CRG's current COO) as a means to retaliate against Plaintiff for terminating Defendant's contract to manage the two radio stations and to extort Plaintiff into selling and/or transferring ownership of the radio stations to Defendant's company.

14.    Upon information and belief, Defendant has used the domain name jasonshroff.com as a platform to unlawfully use Plaintiff's mark to deceive others into believing the material on said domain name was published by Plaintiff, or a person or entity affiliated with Plaintiff.

15.    At all times relevant to the allegations herein, Defendant knew or should have known that Plaintiff is a Missouri corporation with its principal place of business in Branson, Taney County, Missouri.

16.    At all times relevant to the allegations herein, Defendant knew or should have known that publication of defamatory remarks and information regarding Plaintiff via the domain name jasonshroff.com would reach a world-wide audience via the internet including within Taney County, Missouri.

17.    To the best of Plaintiff's knowledge, the website at that domain name is visible on the internet throughout the world including in Taney County, South Carolina.

18.    At all times relevant herein, Defendant intentionally directed the publication of defamatory remarks and information regarding Plaintiff to Taney County, Missouri, in attempts cause detrimental effects to Plaintiff's reputation within the Taney County, Missouri, community.

Electronically Filed - Taney - August 19, 2015 - 11:24 AM

19.    The business of Plaintiff is based largely on the value of its reputation in the community.

20.    Upon information and belief, Defendant, through his website at domain name jasonshroff.com, published statements and allegations tending to impeach the honesty, integrity, virtue, and/or reputation of Plaintiff, thereby exposing Plaintiff to public hatred, contempt, ridicule, and/or obloquy and/or causing Plaintiff to be shunned or avoided, or to injure Plaintiff in its office, business, or occupation (hereinafter the "Statements").

21.    The Statements have a defamatory meaning.

22.    The Statements have caused and continue to cause irreparable damage to Plaintiff's reputation and to the business of Plaintiff.

23.    Because the domain name is identical to the personal, legal name of Jason Shroff, an individual affiliated with CRG, and entity with a public and ongoing business relationship with Plaintiff, the website's existence and the Statements contained thereon have caused confusion with clients and investors of Plaintiff as to the origin and authenticity of the information found at jasonshroff.com and, as a result, has caused and continues to cause irreparable damage to the reputation of Plaintiff.

24.    Defendant's use of the domain name jasonshroff.com, and the Statements contained thereon, have caused and continue to cause confusion and irreparable injury, loss, or damage to the reputation of Plaintiff before this Court is able to reach a final determination on the merits of this action.

25.    Upon information and belief, Defendant published the Statements with actual malice as a means to retaliate against Plaintiff for terminating Defendant's contract to manage the two radio stations and to extort Plaintiff into selling and/or transferring ownership of the

Electronically Filed - Taney - August 19, 2015 - 11:24 AM

radio stations to Defendant's company.

26.     Additionally, many of the Statements constitute defamation *per se* in that they are false accusations of dishonesty, lack of integrity and untrustworthiness which directly impugn Plaintiff's professional reputation and, therefore, malice in their publication is implied.

27.     The Statements are false.

28.     The Statements concerned Plaintiff.

29.     Additionally, Plaintiff stands to suffer economic and material damages in the future due to the damage caused by the Statements published on jasonshroff.com.

30.     As a direct and proximate result of Defendant's false and defamatory statements described herein, and its publication thereof, Plaintiff was greatly injured in its reputation and credit, its business has suffered greatly from loss of customers who have heard of or seen the defamatory material, and it has been deprived of great gains and profits which it otherwise would have made, and has otherwise suffered loss and injury.

31.     The acts of Defendant, as described herein, if not permanently restrained, would constitute immediate legal wrong against Plaintiff.

32.     The acts of Defendant, as described herein, would result in irreparable injury to Plaintiff, for which an adequate remedy could not be afforded by an action for damages.

33.     Absent the injunctive relief prayed for herein, Defendant will likely continue his malfeasance and permanently injure Plaintiff's business good will, reputation, and business relationships.

34.     Plaintiff is ready, willing and able to execute, or cause some responsible party to execute for it, a bond with sufficient surety or sureties to Defendant, in such sum as this Court shall deem sufficient to secure the amount of any damages that may be occasioned by the

Electronically Filed - Taney - August 19, 2015 - 11:24 AM

issuance of a Temporary Restraining Order as requested by Plaintiff against Defendant, which bond is to be conditioned that Plaintiff will abide by the ultimate decision which shall be made in this action, and pay all sums of money, damages, and costs that shall be adjudicated against Plaintiff, if any, if such Temporary Restraining Order shall be dissolved; in lieu thereof, Plaintiff is ready, willing and able to deposit with this Court such sum, in cash, as this Court may require, sufficient to secure such amounts.

35.    Due to the ongoing and immediate harm being caused, the time it would take to locate Defendant and cause Defendant to be served with notice would defeat the purpose of the relief requested herein.

36.    Moreover, upon information and belief, Defendant is in the process of traveling and cannot be located for purposes of personal service of notice of any hearing of the temporary restraining order sought herein.

37.    Accordingly, pursuant to Rule 92.02(b) of the Missouri Rules of Civil Procedure, this Court should not require notice to Defendant prior to the issuance of a temporary restraining order.

WHEREFORE, Plaintiff requests that the Court enter a temporary restraining order in its favor and against Defendant pursuant to Rule 92 of the Missouri Rules of Civil Procedure, without notice to Defendant, pending judicial resolution of the matter asserted herein by Plaintiff, for a period of ten (10) days, or until a preliminary injunction hearing on this matter can be held, (1) enjoining Defendant, or anyone acting by or through Defendant, from (a) maintaining or continuing to use the domain name jasonshroff.com for any purpose whatsoever; (b) using Plaintiff's business name (Surrey Vacation Resorts, Inc. or Grand Crowne Resorts) or mark, or a colorable imitation thereof, in any published format, including email, print, or online

6

Electronically Filed - Taney - August 19, 2015 - 11:24 AM

media/websites; and (c) publishing any statements about Plaintiff's business practices, including

any of Plaintiff's affiliates or subsidiaries; and (2) ordering Defendant, and anyone acting by or

through Defendant, to immediately and permanently delete all and related content on the domain

name jasonshroff.com.

Electronically Filed - Taney - August 19, 2015 - 11:24 AM

## AFFIDAVIT

STATE OF MISSOURI    )
                     ) ss.
COUNTY OF TANEY      )

David R. Cope, Authorized Agent and General Counsel for Surrey Vacation Resorts, Inc. d/b/a Grand Crowne Resorts, the Plaintiff herein, being duly sworn upon her/his oath states that he is over the age of 18, has personal knowledge of the facts set forth in the Application for Temporary Restraining Order Without Notice, and that the facts therein are true and accurate to the best of his knowledge, information or belief.

SURREY VACATION RESORTS, INC.

By:    David R. Cope
Its:    General Counsel

Subscribed and sworn to before me this ____ day of August, 2015.

LORI HALTOM
Notary Public - Notary Seal
State of Missouri
Commissioned for Taney County
My Commission Expires: April 08, 2017
Commission Number: 13405272

Notary Public

NEALE & NEWMAN, L.L.P.

By: Daniel K. Wooten, #48061
    Britton D. Jobe, #62084

American National Center
1949 East Sunshine, Suite 1-130
Springfield, Missouri 65804
Telephone:    (417) 882-9090
Facsimile:    (417) 882-2529
Email:        dwooten@nnlaw.com
              bjobe@nnlaw.com

ATTORNEYS FOR PLAINTIFF

8

# IN THE CIRCUIT COURT OF TANEY COUNTY, MISSOURI

SURREY VACATION RESORTS, INC., )
d/b/a GRAND CROWNE RESORTS, )
                          )
          Plaintiff, )
                          )
vs.                      )      Case No. 15AF-CC00710
                          )
KENT EMMONS, )
                          )
          Defendant. )

FILED
AUG 2 0 2015
BETH WYMAN
CIRCUIT CLERK
TANEY COUNTY

## TEMPORARY RESTRAINING ORDER AND
## ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION
## SHOULD NOT ISSUE

NOW, on this _20th_ day of August, 2015, comes before the Court Plaintiff's Application

for Temporary Restraining Order Without Notice. It is hereby found that notice to the Defendant

is impossible and that the time it would take to locate Defendant and cause Defendant to be

served with notice would defeat the purpose of the relief requested in Plaintiff's Application for

Temporary Restraining Order Without Notice, as set forth in same. It is hereby found that just

cause and reason exist for this Temporary Restraining Order to issue without notice.

Plaintiff appears in person by its representative and through counsel. After hearing

argument and evidence, it is now hereby

ORDERED, ADJUDGED, and DECREED that:

     1.     Defendant, and/or anyone acting by or through Defendant, is hereby enjoined and

restrained from:

          a.     Maintaining or continuing to use the domain name jasonshroff.com for

               any purpose whatsoever;

1



**EXHIBIT**

**H**

      b.     Using Plaintiff's business name (Surrey Vacation Resorts, Inc. or Grand Crowne Resorts) or mark, or a colorable imitation thereof, in any published format, including email, print, or online media/websites; and

      c.     Publishing any statements about Plaintiff or Plaintiff's business practices, including any of Plaintiff's affiliates or subsidiaries; and

2.     Defendant, and/or anyone acting by or through Defendant, is hereby ordered to immediately and permanently delete all content on the domain name jasonshroff.com, and all related content from any platform whatsoever.

As a condition to this Temporary Restraining Order, Plaintiff shall post a bond in the amount of $ _500_ to be placed by the Clerk of Court in an interest-bearing account.

This Order shall remain in effect for a period of ten (10) days from this date, unless extended by agreement of the parties or by the Court.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that Plaintiff's request for a Preliminary Injunction be set for hearing on the _2_ day of _Sept_, 2015, at _1:00_ a.m./p.m. in the Circuit Court of Taney County, Missouri, and that Defendant shall show cause before the Court on that date why a Preliminary Injunction should not be granted and restraining it from the matters in this Restraining Order above described.

IT IS SO ORDERED.

This _20_ day of August, 2015.

                                 _____
                                   Judge
                                   Taney County, Missouri

**From:** Domains By Proxy [mailto:registrantinquiries@domainsbyproxy.com]
**Sent:** Friday, August 21, 2015 4:21 PM
**To:** David Cope <drcope@GCRVacations.com>
**Subject:** Update [Incident ID: 26731133] - Temporary Restraining Order re: KENT EMMONS and
WWW.JASONSHROFF.COM



PRIVATE REGISTRATIONS®

**Discussion Notes**
**Support Staff Response**

Dear David Cope,

Thank you for contacting Domains By Proxy, LLC ("DBP"). We have reviewed the information you provided concerning the domain name JASONSHROFF.COM. Based upon your representations, we have cancelled our proxy service so that you may pursue legal redress against the proper party.

Further, we have forwarded a copy of the TRO to the Registrar, GoDaddy. If you have additional

**EXHIBIT**
I

questions, please reach out to disputes@godaddy.com.


Registrant Contact Information:
Registrant Name:

Registrant Name: Kent Emmons
Registrant Organization:
Registrant Street: 9663 santa monica blvd
Registrant Street: # 869
Registrant City: beverly hills
Registrant State/Province: California
Registrant Postal Code: 90210
Registrant Country: United States
Registrant Phone: +1.3108778736
Registrant Phone Ext:
Registrant Fax: +1.3108615808
Registrant Fax Ext:
Registrant Email: kentemmons@gmail.com

Please be advised that this information was provided by the customer. As such, Domains By Proxy cannot guarantee its accuracy. Please let us know if you have any questions or concerns.


Sincerely,

Office of the General Manager
Domains By Proxy, LLC

**Customer Inquiry**

To Whom It May Concern, Please see attached Temporary Restraining Order entered today, August 20, 2015 by the Circuit Court for Taney County, MO against Defendant Kent Emmons, who owns or controls, the website at URL www.jasonshroff.com.  This TRO enjoins the Defendant and any entities acting by or through Defendant from maintaining or continuing to use the website www.jasonshroff.com for any purpose whatsoever.  Accordingly, demand is hereby made that your company complies with said TRO and disables the website www.jasonshroff.com and deletes all content therefrom.  Additionally, please provide detailed information regarding the registrant of www.jasonshroff.com.  If you have any questions or require any additional information, please do not hesitate to contact the undersigned.   Thank you in advance for your prompt attention to this matter. Sincerely, David R. Cope General Counsel Surrey Vacation Resorts, Inc. d/b/a Grand Crowne Resorts 417-332-8370 drcope@gcrvacations.com
*************************************NOTICE*****************************************
IMPORTANT: The Missouri Bar Disciplinary Counsel requires all Missouri lawyers to notify all recipients of e-mail that (1) e-mail communication is not a secure method of communication, (2) any e-mail that is sent to you or by you may be copied and held by various computers it passes through as it goes from me to you or vice versa, (3) persons not participating in our communication may intercept our communications by improperly accessing your computer or my

computer or even some computer unconnected to either of us which the e-mail passed through. I am communicating to you via e-mail because you have consented to receive communications via this medium. If you change your mind and want future communications to be sent in a different fashion, please notify me at once. CONFIDENTIALITY NOTICE: This email may contain information that is privileged, confidential or otherwise protected from disclosure. If you are not the intended recipient of this email, please notify the sender immediately by return email, purge it and do not disseminate or copy it.

If you need further assistance with this matter, please reply to this email and reference [Incident ID: 26731133].

Sincerely,
Domains By Proxy Customer Support

Copyright © 2002-2015 Domains By Proxy, LLC.
All rights reserved.
U.S. Pat No. 7,130,878

# Kent Emmons

FILED
2015 SEP -2  AM 11: 25
CIRCUIT CLERK
TANEY COUNTY, MISSOURI

September 1, 2015

TO: Taney County Court

RE: Case number: 15AF-CC00710

(Surrey Vacation Resorts / Kent Emmons)

Dear Judge:

I am the defendant in this case. I am not a resident of Missouri and can not be there for the hearing although I can attend by phone if possible. I did work for the Plaintiff and they owe me a lot of money, making it impossible for me to travel there at this time. In fact, they have not paid me since last December despite promise after promise.

As per the 10 day TRO that was granted (Effective dates August 20 – August 30) I abided by that for that period.

As requested by the Plaintiff, going forward, I have no intention of:

1. Maintaining the web domain www.jasonshroff.com
2. Using the business name Surrey Vacation Resorts, Inc. or Grand Crowne Resorts in any public manor
3. Publishing any statements about Plaintiff's business practices outside of those in court documents



**EXHIBIT**

J

RX Date/Time        09/02/2015   09:59   818   879-8279                              P.002
     09/02/2015  09:09   818--879-8279              FEDEX OFFICE      4295         PAGE  02

**4. Additionally, all Web content on www.jasonshroff.com has
   been permanently deleted and will remain deleted.**

**I believe that is what the Plaintiff is asking for and I agree to
that.**

**Thank you for your kind consideration.**

**Kent Emmons**

# Your Missouri Courts

Search for Cases by:   Select Search Method...

| Judicial Links | | eFiling | | Help | | Contact Us | | Print |

**15AF-CC00710 - SURREY VACATION RESORTS, INC. D/B/A V KENT EMMONS (E-CASE)**

GrantedPublicAccess   Logoff BRITTONJOBE2009

| Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution |

This information is provided as a service and is not considered an official court record.

Click here to eFile on Case  Click here to Respond to Selected Documents Sort Date Entries:   ● Descending   ○ Ascending   Display Options:   All Entries

**09/02/2015**   ☐   **Hearing Held**

Petitioner counsel appears with Representative of Petitioner. Respondent does not appear. Court hears evidence for the continuation of the Temporary Restraining Order. Court after hearing evidence finds that the TRO will continue to remain in place till further order of this court. Judge Eighmy

**Scheduled For:** 09/02/2015;  1:00 PM ;  ERIC DELL EIGHMY;  Taney

☐   **Correspondence Filed**

**Filed By:** KENT EMMONS

**08/24/2015**   ☐   **Summons Personally Served**

Document ID - 15-SMOS-84; Served To - EMMONS, KENT; Server - ; Served Date - 23-AUG-15; Served Time - 09:30:00; Service Type - Special Process Server; Reason Description - Served

**Associated Entries:** 08/21/2015 - Summons Issued-Circuit  ⊞

☐   **Notice of Service**

Return of Service.

**Filed By:** BRITTON D JOBE

**On Behalf Of:** SURREY VACATION RESORTS, INC. D/B/A GRAND CROWNE RESORTS

**EXHIBIT**

J