**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF TENNESSEE**
**KNOXVILLE**

| | |
|---|---|
| IN RE: SURREY VACATION RESORTS, INC., | ) ) ) |
| Alleged Debtor | ) ) No. 3:15-bk-32648-SHB ) Chapter 7 ) |

**AMENDED MEMORANDUM IN SUPPORT OF MOTION OF SURREY VACATION RESORTS, INC., TO DISMISS INVOLUNTARY PETITION**

Surrey Vacation Resorts, Inc. (Surrey) submits this Amended Memorandum in support of its motion to dismiss the involuntary petition filed against it. The petition should be dismissed for the following reasons:

1. This district is not the proper venue. Surrey is a corporation chartered in Missouri in 1993. During the 180 days immediately preceding the filing of the involuntary petition, Surrey's corporate headquarters was located in the Western District of Missouri, in Branson, Missouri. During that same period, Surrey's principal assets, including but not limited to commercial real estate, were located in the Western District of Missouri. The Court must dismiss this case or transfer it to the Western District of Missouri.

2. Because Surrey has twelve or more creditors holding claims of the sort described in 11 U.S.C. § 303(b), three qualified creditors must sign the involuntary petition. However, two of the three petitioning creditors in this case hold claims that are the subject of a bona fide dispute, and are therefore disqualified under § 303(b).

    (a) Petitioner Wahoo Ziplines TN, LLC (Wahoo) is a party to a contract with Surrey whereby Surrey issues vouchers to its customers. The customers redeem the vouchers with Wahoo for admission to a zipline attraction operated by Wahoo. Wahoo then bills Surrey for the cost of admission. A few days before filing the involuntary petition, Wahoo sent Surrey

1

an invoice for $40,718.00, listing vouchers that had been redeemed from May 2014 to August 2015. However, the invoices included vouchers that had already been billed and paid for, and did not include any documentation to support any of the amounts charged. Wahoo said it would provide documentation, but instead filed the involuntary petition. Surrey disputes the amount shown on the invoices.

    (b)  Waitt Outdoor (Waitt) leases billboards to Surrey. In the involuntary petition, Waitt alleges that it was owed $10,261.25 on the petition date. However, Waitt was not entitled to such a payment. Before the filing of the petition, Waitt and Surrey had reached a settlement agreement whereby Surrey would pay its debt to Waitt in installments. The first installment was paid pre-petition. Payments are continuing. Surrey disputes that it was obligated to make a payment of $10,261.25 to Waitt as of the petition date.

  3.  Wahoo did not file the petition in good faith. The petition was not filed for any legitimate bankruptcy purpose, but was filed to attempt to coerce Surrey to have an affiliate of Surrey transfer a radio station to a company owned by Kent Emmons, who is also the CEO and part owner of Wahoo. Emmons threatened to have involuntary petitions filed against Surrey and others if the station was not transferred. After the involuntary petition was filed, Emmons said he would have this case dismissed if the radio station was transferred. In a further attempt to coerce the transfer of the radio station, Emmons set up a website on which he published false, defamatory and lewd statements about Surrey and its business associates. At the time the involuntary petition was filed, Emmons was under a Missouri state court temporary restraining order, which has now become an injunction, requiring him to take down the website and cease his campaign of defamation. If Wahoo is dismissed as a petitioner, there will not be a sufficient number of petitioning creditors under 11 U.S.C. § 303.

  These matters are discussed in more detail, below.

**This district is not the proper venue.**

A case under title 11 may be commenced in a district "in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period other than the domicile, residence or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district...." 28 U.S.C. § 1408(1).  Surrey is a Missouri corporation chartered in 1993.  During the 180 days immediately preceding the filing of the involuntary petition, its corporate headquarters was located in Branson, in the Western District of Missouri. During that same period, Surrey's principal assets were located in the Western District of Missouri, including but not limited to commercial real estate.[1]  Under 28 U.S.C. § 1406(a) and Rule 1014(2) of the Federal Rules of Bankruptcy Procedure, this Court must either dismiss this case or transfer it to the Western District of Missouri, where Branson is located.  Thompson v. Greenwood, 507 F.3d 416, 424 (6th Cir. 2007), cert. denied, 555 U.S. 880 (2008).

This case should be dismissed rather than transferred.  As discussed below, the case is subject to dismissal on other grounds, and would still be subject to dismissal after being transferred. If, after dismissal, three or more qualified creditors desire to file a good faith petition in the proper district, they will still be free to do so. However, if the Court does not dismiss this case, it must be transferred to the Western District of Missouri. Thompson, 507 F.3d at 424.

**The claims of two of the petitioners are the subject of a bona dispute.**

Surrey has more than 12 creditors of the kind described in 11 U.S.C. §303(b)(1).[2]  Therefore, there must be at least three creditors qualified under Section 303(b)(1) to force Surrey

---

[1] Affidavit of David R. Cope, ¶ 2 and Ex. A thereto (hereinafter cited as "Cope Aff.").
[2] Affidavit of Matthew Spangler, ¶ 11 (hereinafter cited as "Spangler Aff.").

into an involuntary bankruptcy.  A creditor is not a qualified petitioner if its claim is "the subject of a bona fide dispute as to liability or amount."  §303(b)(1). A claim is subject to a bona fide dispute "if there is either a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts….The court is not, however, required to resolve any genuine issues of fact; it must only determine that such issues exist." In re Miller, 487 Bankr. 875, 880 (Bankr. E.D. Tenn. 2012) (citations omitted).

Petitioner's Wahoo's claim is the subject of a bona fide dispute.  Wahoo and Surrey are parties to a contract whereby Surrey issues vouchers to its customers, which the customers may redeem with Wahoo for admission to a zipline attraction operated by Wahoo.  Surrey has agreed to pay Wahoo for each voucher redeemed by a customer.  Payment from Surrey to Wahoo is due within 15 days from Surrey's receipt of Wahoo's invoice.[3]

On August 20, 2015, shortly before filing the involuntary petition, Wahoo sent Surrey two invoices totaling $40,718.00.  Wahoo had not sent Surrey an invoice since 2014.  The invoices purported to cover vouchers redeemed during the period starting May 13, 2014 and ending August 3, 2015.[4]  The Wahoo invoices included at least $5,738.00 worth of vouchers that Wahoo had already billed to Surrey and that Surrey had already paid.  In addition, Wahoo submitted no documentation to support the invoices.  On August 25, 2014, Surrey's accounts payable manager asked Wahoo for the supporting documentation, and was told it would be provided in a few days.  However, unknown to Surrey, Wahoo had already signed the involuntary petition.[5] Wahoo filed the petition on August 31, 2015, even though the invoices were not due until September 4, 2015.  The supporting documentation has never been furnished.  Because of

---

[3] Cope Aff., ¶ 3 and Exs. B and C thereto; Spangler Aff., ¶ 2.
[4] Spangler Aff., ¶¶ 3-4 and Ex. A thereto.
[5] Wahoo's signature on the petition is dated August 23, 2015.

4

the double billing and lack of supporting documentation, Surrey disputes that it owes the amount shown on the Wahoo invoices.[6]

The claim of petitioning creditor Waitt is also the subject of a bona fide dispute. Surrey does owe Waitt some money for billboard rental. However, Surrey disputes that it owed Waitt a payment of $10,261.25 as of the petition date, as alleged in the involuntary petition. In July 2015, Waitt retained a collection agency that demanded payment of $16,618.75 from Surrey. Surrey's general counsel contacted the collection agency and negotiated a settlement agreement whereby Surrey would pay the amount due, in five monthly payments of $3,323.75 each, to be sent to the collection agent. The first payment was made August 4, 2015. Surrey is still making payments to Waitt, through the collection agency, pursuant to the settlement agreement. Surrey disputes that it was obligated to make a payment of $10,261.25 as of the petition date.[7]

**The petition was not filed in good faith.**

11 U.S.C. § 303(i)(2) authorizes the Court, after dismissal of an involuntary petition, to grant a judgment for damages against any petitioner that filed the petition in "bad faith". Although § 303 does not expressly state that an involuntary petition must be filed in good faith, numerous courts have held that an involuntary petition must be dismissed if filed in bad faith. 2 Collier on Bankruptcy ¶ 303.16 (16th ed. 2015). To determine whether an involuntary petition was filed in bad faith, the Court must look at the "totality of circumstances," including the reasons for which the petition was filed. Adell v. John Richards Homes Building Co., L.L.C. (In re John Richards Homes Building Co., L.L.C.), 439 F.3d 248, 254-255 (6th Cir.2006) (citations omitted), cert. denied, 549 U.S. 818 (2006).

As discussed below, the petition in this case was not filed for any legitimate bankruptcy purpose, but for the purpose of coercing Surrey into transferring assets to a company run by Kent

---

[6] Spangler Aff., ¶¶ 3-9 and Exs. A and B thereto.
[7] Cope Aff., ¶¶ 17-19.

Emmons, the CEO and part owner of petitioning creditor Wahoo. Many courts have dismissed involuntary petitions based on bad faith filing where a petitioner filed the petition not for some valid bankruptcy purpose, but to attempt to obtain some advantage or benefit for itself. Some representative cases:

Forever Green Athletic Fields, Inc. v. Dawson, 514 Bankr. 768 (E.D. Pa. 2014). The petitioning creditor held a judgment against the debtor, but the debtor had claims against the creditor that were being litigated in state court. The bankruptcy court dismissed the petition for bad faith because the creditor had "impermissibly used the involuntary petition as a litigation tactic" and had filed the petition to frustrate the debtor's efforts to litigate its claims and to force payment of the judgment. The petitioning creditor had put his personal interests ahead of those of the other creditors, which was not a valid bankruptcy purpose. Id. at 777-778. In affirming, the district court noted that involuntary and voluntary petitions under all chapters of the Bankruptcy Code are subject to dismissal if filed in bad faith. A good faith requirement "ensures that the Bankruptcy Code's careful balancing of interests is not undermined by petitioners whose aims are antithetical to the basic purposes of bankruptcy." Id. at 785 (citations omitted). The petitioning creditor argued that bad faith alone should not be grounds for dismissal of a petition, but should be accompanied by some other issue or defect. The district court disagreed: "A petitioner's good faith is a threshold inquiry into the validity of a bankruptcy filing. Courts have repeatedly held that the bad faith determination rests on the filer's purpose in invoking the jurisdiction of the Bankruptcy Court." Id. at 787-788.

In re F.R.P. Industries, Inc., 73 Bankr. 309 (Bankr. N.D. Fla. 1987). The involuntary chapter 11 petition was dismissed for bad faith because the creditor's purpose in filing was to attempt to effect a hostile takeover of the debtor company by filing a competing chapter 11 plan. Id. at 313.

6

<u>In re St. Marie Development Corp. of Montana, Inc.</u>, 334 Bankr. 663 (Bankr. D. Mont. 2005). The court found that the petition was filed to halt state court litigation in which the debtor was suing the petitioning creditor. The debtor's sole shareholder was funding the litigation, but would not continue to fund it if the chapter 7 petition was granted. <u>Id.</u> at 669-670. The court dismissed the petition for bad faith: "Using an involuntary filing to protect one's own interest rather than protecting against other creditors, thereby gaining disproportionate advantage is bad faith." <u>Id.</u> at 671 (citation omitted).

<u>Basin Electric Power Cooperative v. Midwest Processing Co.</u>, 47 Bankr. 903 (D.N.D. 1984), aff'd, 769 F.2d 483 (8th Cir. 1985). The debtor and the petitioning creditor were parties to a letter of credit that allowed the creditor to draw on the letter of credit if a bankruptcy petition was filed against the debtor. The creditor filed the involuntary petition in order to draw on the letter of credit. 47 Bankr. at 905, 908-909. The bankruptcy court refused to dismiss the petition, but the district court reversed, holding that the bankruptcy court should have considered the creditor's motivation and conduct in filing the involuntary petition:

> Considering subjective motivations of petitioning creditors is analogous to considering possible ulterior motives of petitioning debtors in voluntary bankruptcy proceedings. It has long been recognized that using the bankruptcy process to promote individual interests in a manner not consistent with the legislative purposes of the Bankruptcy Code is an abuse of the jurisdiction of the bankruptcy courts.

47 Bankr. at 909. The creditor "filed the involuntary petition to put itself in a more advantageous position with respect to the . . . letter of credit. In so doing, [the creditor] attempted to invoke the jurisdiction of the Bankruptcy Court to affect a contract dispute." <u>Id.</u> at 909-910. On further appeal, the dismissal was upheld by the Eighth Circuit Court of Appeals: "The use of the petition by [the creditor] to affect [sic] a non-bankruptcy purpose is further evidence of bad faith." 769 F. 2d at 487.

Atlas Machine & Ironworks, Inc. v. Bethlehem Steel Corp., 986 F.2d 709 (4th Cir. 1993). The petition was dismissed for bad faith filing because the creditor filed the petition for the purpose of collecting the debt owed by the debtor to the creditor. Upholding the dismissal, the Fourth Circuit Court cited the legislative history of the Bankruptcy Code, which states that the goals of bankruptcy are: "(1) equality of distribution among creditors, (2) a fresh start for debtors, and (3) economical administration." Report of the Commission on the Bankruptcy Laws of the United States, Part I, (July 1973), at 75. Because the petitioning creditor attempted to use the bankruptcy process as a tool to collect its individual debt, the petition was brought in bad faith: "Debt collection is not a proper purpose of bankruptcy." 986 F.2d at 716.

In re VII Holdings Co., 362 Bankr. 663, 666 (Bankr. D. Del. 2007). The involuntary petition was dismissed for bad faith because it was filed to attempt to frustrate a foreclosure. Id. at 666.

The driving force behind the petition in this case is Kent Emmons, CEO and part owner of petitioner Wahoo. Emmons is also president of Kent Direct, Inc., which managed radio stations owned by an affilitate of Surrey. When Surrey terminated the management agreement in July 2015, Emmons negotiated unsuccessfully to have one of the stations sold or given to Kent Direct. Emmons threatened to file involuntary petitions against Surrey and its business associates if the station was not transferred. After Emmons made good on his threat, and the petition was filed, Emmons advised Surrey that he would have this case dismissed if the station was transferred.[8]

As part of his efforts to coerce the transfer of the radio station, Emmons also embarked on an internet smear campaign against Surrey and its business associates. When the petition in this case was filed, Emmons was already subject to a Missouri state court temporary restraining

---

[8] Cope Aff., ¶¶ 5-9 and Exs. D and E thereto.

8

order that has forced him to dismantle a website he had set up under a misleading domain name that linked it to one of Surrey's business associates. On the website, Emmons falsely accused Surrey and its business associates of dishonesty, and made false, lewd remarks about them. Emmons did not contest the allegations against him in the Missouri action, and the TRO is now an injunction.[9]

Emmons caused Wahoo to file a petition in this case to attempt to coerce Surrey to transfer the radio station. That is not a valid bankruptcy purpose. The involuntary petition in this case is an abuse of the jurisdiction of this Court, and should be dismissed for bad faith.

**Conclusion.**

For all the foregoing reasons, Surrey respectfully requests that the Court dismiss this case or transfer venue to the Western District of Missouri.

Respectfully submitted.

/s/ M. Edward Owens, Jr.
M. Edward Owens, Jr. (BPR #007159)

LEWIS, THOMASON, KING, KRIEG & WALDROP, P.C.
One Centre Square
620 Market Street, Fifth Floor
Knoxville, Tennessee 37902
(865) 546-4646
Attorneys for Surrey Vacation Resorts, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 23rd day of September, 2015, a copy of the foregoing Amended Memorandum in Support of Motion to Dismiss was filed electronically. The Amended Memorandum will be served electronically on the entities specified in the Notice of Electronic Filing to be issued by the electronic case filing system**.**

/s/ M. Edward Owens, Jr.
M. Edward Owens, Jr.

---

[9] Cope Aff., ¶¶ 10-15 and Exs. F through J thereto.